******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# STATE OF CONNECTICUT *v.* DEJA PASCHAL
## (AC 43270)

Elgo, Cradle and Suarez, Js.

*Syllabus*

Convicted of attempt to commit assault of public safety personnel, the defendant appealed to this court. At a pretrial hearing, the defendant informed the trial court that he was dissatisfied with the representation provided by his public defender and requested that he be able to proceed as a self-represented party. The trial court determined that the defendant was mainly concerned with the speed at which the proceedings were progressing, denied the request without prejudice, asked the defendant to give defense counsel another chance to effectively represent him, and told the defendant that he could reassert his request at a later time. Approximately four months later, at another pretrial hearing, the defendant again indicated that he was frustrated with his defense counsel and the speed of the proceedings. He asked the trial court if he could have new counsel and then stated that he was reasserting his sixth amendment right to self-representation. The trial court told the defendant that he needed to file a motion if he wanted to represent himself. The defendant did not file such a motion and defense counsel continued to represent him without additional complaint until approximately nine months later, when the defendant personally filed several motions. During a hearing on the defendant's motion for the removal of appointed counsel and appointment of new counsel, the defendant again asserted that his requests for self-representation and for new counsel were wrongfully denied. He asked for the appointment of a special public defender to replace defense counsel, and he further indicated that he would not object to the appointment of new counsel. Thereafter, new counsel was appointed and the trial proceeded without the defendant making any additional requests for self-representation. *Held*:

1. The defendant could not prevail on his claim that the trial court deprived him of his right to self-representation because the defendant waived that right: the trial court did not conclusively deny the defendant's initial in-court request for self-representation, as it explicitly denied the defendant's request without prejudice, granted a short continuance to provide defense counsel with additional time to obtain the evidence that the defendant was seeking, and told the defendant that he could reassert his right at any point in the future; moreover, the defendant's second in-court request for self-representation did not constitute a clear and unequivocal request, as was required to invoke the right, because it was intertwined with a request for new counsel, and the trial court expressly advised the defendant that he could file a motion if he wished to proceed as a self-represented party; furthermore, the defendant's requests set forth in his motions did not reflect clear and unequivocal assertions of the right to self-representation, as he made simultaneous requests to represent himself and for the appointment of new counsel, and the defendant explicitly told the trial court at the hearing on his motion for the removal of appointed counsel and appointment for new counsel that he would not object to the appointment of new counsel.

2. The defendant's claim that the trial court abused its discretion by admitting evidence of his prior uncharged conduct was not reviewable, the defendant having waived that claim at trial: the defendant was precluded from claiming that the trial court erred by admitting such evidence because, during the hearing on the defendant's motion to preclude evidence, defense counsel conceded that the prior instances of uncharged conduct were relevant for showing intent, motive, and a common scheme and suggested that a limited number of the instances were admissible, and because defense counsel failed to object to any of the evidence of prior instances of misconduct at trial.

Argued March 2—officially released September 7, 2021

*Procedural History*

Substitute information charging the defendant with three counts of the crime of assault of public safety personnel and one count of the crime of attempt to commit assault of public safety personnel, brought to the Superior Court in the judicial district of Danbury, geographical area number three, and tried to the jury before *Pavia*, *J.*; verdict and judgment of guilty of attempt to commit assault of public safety personnel, from which the defendant appealed to this court. *Affirmed.*

*Laura Marie Hamilton*, certified legal intern, with whom was *James B. Streeto*, senior assistant public defender, for the appellant (defendant).

*Laurie N. Feldman*, deputy assistant state's attorney, with whom, on the brief, were *Stephen J. Sedensky III*, state's attorney, and *Jason Germain*, senior assistant state's attorney, for the appellee (state).

*Opinion*

CRADLE, J. The defendant, Deja Paschal,[1] appeals from the judgment of conviction, rendered following a jury trial, of one count of attempt to commit assault of public safety personnel in violation of General Statutes §§ 53a-49 (a) (2) and 53a-167c (a) (5). On appeal, the defendant claims that the trial court (1) violated his constitutional right to self-representation and (2) erred by allowing the state to present evidence of uncharged misconduct. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On December 5, 2016, the defendant was incarcerated at Garner Correctional Institution. While making a routine inspection of the facility, Correction Officer Christopher Byars noticed that the window of the defendant's cell door had been covered with toilet paper, obstructing the officers' view of the cell. Because obstructing the officers' view of the cell is against the facility's regulations, Byars told the defendant to immediately remove the toilet paper. The defendant did not comply and Byars contacted his supervisor, Captain Thomas Kenny, to assist. On arriving, Kenny told the defendant to uncover the window. Although the defendant initially threatened to continue covering his window, the defendant removed the toilet paper.

Approximately fifteen minutes later, Byars again found the defendant's window covered with toilet paper. Byars contacted Kenny again, who told the defendant to remove the covering. When the defendant refused, Kenny determined that the defendant should be moved to a high security cell for additional supervision. In accordance with the facility's regulations, Correction Officers Byars, Anthony Blekis, Anthony Kacprzyski, John Reyes, and Peter Swan assisted in moving the defendant while Officer William Galpin videotaped the move. After the defendant was transferred, the officers conducted a strip search and attempted to apply in cell restraints to secure the defendant's ankles and hands in front of his body. While the officers were attempting to secure the defendant, he threatened to spit on them and loudly sucked in saliva. As a result of this threat, the officers covered the defendant's mouth and put a mesh safety veil designed to block the passage of saliva on his head. The defendant spit, striking two of the officers through the safety veil. The saliva struck Kacprzyski in the face and Blekis on the arms.

The defendant was charged with two counts of assault of public safety personnel in violation of § 53a-167c (a) (5); one count of assault of public safety personnel in violation of § 53a-167c (a) (3); and one count of attempt to commit assault of public safety personnel in violation of §§ 53a-49 (a) (2) and 53a-167c (a) (5). Following a trial, a jury acquitted the defendant of the

three assault counts but convicted him of attempt to commit assault of public safety personnel. On May 21, 2019, the court, *Pavia, J.*, sentenced the defendant to a total effective sentence of seven years of incarceration, execution suspended after three years, followed by five years of probation, to run consecutive to the defendant's existing sentence in an unrelated matter. This appeal followed.

I

The defendant first argues that the court deprived him of his right to self-representation when it improperly denied his clear and unequivocal request to represent himself without canvassing him regarding the waiver of the right to counsel. We are not persuaded.

The following legal principles guide our analysis of the defendant's claim. "The sixth amendment to the United States constitution provides in relevant part: In all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense. The sixth amendment right to counsel is made applicable to state prosecutions through the due process clause of the fourteenth amendment. . . . In *Faretta* v. *California*, [422 U.S. 806, 807, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975)] the United States Supreme Court concluded that the sixth amendment [also] embodies a right to self-representation and that a defendant in a state criminal trial has a constitutional right to proceed without counsel when he voluntarily and intelligently elects to do so. . . . In short, forcing a lawyer upon an unwilling defendant is contrary to his basic right to defend himself if he truly wants to do so. . . .

"It is well established that [t]he right to counsel and the right to self-representation present mutually exclusive alternatives. A criminal defendant has a constitutionally protected interest in each, but since the two rights cannot be exercised simultaneously, a defendant must choose between them. When the right to have competent counsel ceases as the result of a sufficient waiver, the right of self-representation begins. . . . Put another way, a defendant properly exercises his right to self-representation by knowingly and intelligently waiving his right to representation by counsel. . . .

"The inquiry mandated by Practice Book § 44-3 is designed to ensure the knowing and intelligent waiver of counsel that constitutionally is required. . . . We ordinarily review for abuse of discretion a trial court's determination, made after a canvass pursuant to . . . § 44-3, that a defendant has knowingly and voluntarily waived his right to counsel. . . . In cases . . . however, where the defendant claims that the trial court improperly failed to exercise that discretion by canvassing him after he clearly and unequivocally invoked his right to represent himself . . . whether the defendant's request was clear and unequivocal presents a

mixed question of law and fact, over which . . . our review is plenary. . . .

"State and federal courts consistently have discussed the right to self-representation in terms of invoking or asserting it . . . and have concluded that there can be no infringement of the right to self-representation in the absence of a defendant's proper assertion of that right. . . . The threshold requirement that the defendant clearly and unequivocally invoke his right to proceed [as a self-represented party] is one of many safeguards of the fundamental right to counsel. . . . Accordingly, [t]he constitutional right of self-representation depends . . . upon its invocation by the defendant in a clear and unequivocal manner. . . . In the absence of a clear and unequivocal assertion of the right to self-representation, a trial court has no independent obligation to inquire into the defendant's interest in representing himself . . . . [Instead] recognition of the right becomes a matter entrusted to the exercise of discretion by the trial court. . . . Conversely, once there has been an unequivocal request for self-representation, a court must undertake an inquiry [pursuant to Practice Book § 44-3], on the record, to inform the defendant of the risks of self-representation and to permit him to make a knowing and intelligent waiver of his right to counsel. . . .

"Although a clear and unequivocal request is required, there is no standard form it must take. [A] defendant does not need to recite some talismanic formula hoping to open the eyes and ears of the court to [that] request. Insofar as the desire to proceed [as a self-represented party] is concerned, [a defendant] must do no more than state his request, either orally or in writing, unambiguously to the court so that no reasonable person can say that the request was not made. . . . Moreover, it is generally incumbent upon the courts to elicit that elevated degree of clarity through a detailed inquiry. That is, the triggering statement in a defendant's attempt to waive his right to counsel need not be punctilious; *rather*, *the dialogue* between the court and the defendant must result in a clear and unequivocal statement. . . .

"Finally, in conducting our review, we are cognizant that the context of [a] reference to self-representation is important in determining whether the reference itself was a clear invocation of the right to self-representation. . . . The inquiry is fact intensive and should be based on the totality of the circumstances surrounding the request . . . which may include, inter alia, whether the request was for hybrid representation . . . or merely for the appointment of standby or advisory counsel . . . the trial court's response to a request . . . whether a defendant has consistently vacillated in his request . . . and whether a request is the result of an emotional outburst . . . ." (Emphasis altered; internal

quotation marks omitted.) *State* v. *Pires*, 310 Conn. 222, 230–32, 77 A.3d 87 (2013).

"When a defendant's assertion of the right to self-representation is not clear and unequivocal, recognition of the right becomes a matter entrusted to the exercise of discretion by the trial court. . . . In the exercise of that discretion, the trial court must weigh into the balance its obligation to indulge in every reasonable presumption against waiver of the right to counsel." (Citations omitted; internal quotation marks omitted.) *State* v. *Carter*, 200 Conn. 607, 613–14, 513 A.2d 47 (1986). With these principles in mind, we turn to the defendant's claim on appeal.

The defendant claims that he first asserted his right to self-representation in court on May 4, 2017. During that court appearance, Assistant Public Defender Thomas Leaf appeared on the defendant's behalf and informed the court, *Shaban, J.*, that the defendant wanted to represent himself. The following colloquy took place between the court, defense counsel, and the defendant:

"[Attorney Leaf]: I . . . went to see [the defendant]. He refused to speak with me this morning and informed me through the Marshal Services that he . . . wants to go forward as a self-represented party.

"The Court: All right. Good Morning, sir.

"The Defendant: Good morning, Your Honor. We've been back to this court four times since arraignment. Attorney Leaf has not [come] for an initial interview. Attorney Leaf has failed to get the required police reports. He has failed to obtain the video from the state prosecution. He has done nothing to assist me in my case. He's currently ineffective. I'd like to proceed pro se."

The court then asked Leaf about the status of his file and whether he had received any discovery materials. Leaf explained that he had received the police reports but was waiting to receive the video recording from the state depicting the incident. The defendant indicated that he wanted to pursue "contempt of court" because the state had not turned over the video recording, but his attorney had told him that he would file a motion to compel. The court then addressed the defendant concerning the reason for his stated desire to represent himself and said, "I assume that, by wanting to represent yourself, you believe that you'll be able to dispose of this case more quickly than it has gone up to this point. Is that a fair assumption?" The defendant answered, "[T]hat is correct . . . ." The defendant complained that the state did not have evidence to sustain an assault charge and that his attorney had not filed a motion to dismiss. The court explained to the defendant that his case will not move any faster if he proceeds as a self-represented party because he needs

access to the evidence and the state has to give him the video recording of the incident. Therefore, the court stated that Leaf has "a history of working with the state's attorney's office and I think that he can effectively represent you in this matter. And so, at this point, I am—I'm going to deny your request to represent yourself without prejudice, meaning you can—you can make the request again down the road. I want to give Mr. Leaf one more opportunity here, at least, to see if he can get his hands on the tape and effectively represent you in the matter and try and achieve the goals that you're trying to achieve . . . ." The defendant preserved his objection on the record and the court granted the defendant a continuance of one week.[2]

On appeal, the defendant argues that he clearly and unequivocally requested to represent himself, that the court abused its discretion in failing to canvass him, and that he was, therefore, deprived of his constitutional right to self-representation. The state argues, however, that the court's subsequent inquiry revealed that the defendant may simply have been expressing frustration with his attorney and not necessarily invoking his right to represent himself. Assuming, without deciding, that the defendant's statement during his dialogue with the court on May 4, 2017, constituted a clear and unequivocal request to represent himself, we conclude that the court did not conclusively deny that request and that the defendant subsequently waived it.

"[W]hen a trial court *has not* clearly and conclusively denied a defendant's request to represent himself, the defendant may subsequently waive such a request. But, when a court has clearly and conclusively denied the request, the defendant does not waive his right to self-representation by subsequently acquiescing in being represented by counsel or by failing to reassert that right." (Emphasis added.) *State* v. *Braswell*, 318 Conn. 815, 843–44, 123 A.3d 835 (2015).

In reaching this conclusion, our Supreme Court relied on the decision of the United States Court of Appeals for the Second Circuit in *Wilson* v. *Walker*, 204 F.3d 33 (2d Cir.), cert. denied, 531 U.S. 892, 121 S. Ct. 218, 148 L. Ed. 2d 155 (2000). In *Wilson*, the Second Circuit held: "Whether or not [the trial court's] ruling . . . could be construed as a clear denial of Wilson's request to proceed [as a self-represented party] . . . it is apparent that both Wilson and [the trial court] considered the matter still open for discussion . . . . [I]n the absence of additional evidence, we are unwilling to assume that a renewal of Wilson's request would have been fruitless. . . . In view of the fact that there were two subsequent changes in the attorney appointed to represent Wilson and the question of self-representation was left open for possible further discussion, we conclude that Wilson's failure to reassert his desire to proceed [as a self-represented party] constituted a waiver . . . ." (Citations

omitted; footnote omitted; internal quotation marks omitted.) Id., 38.

The same reasoning applies to the present case. It is clear from the record that both the defendant and the court considered the matter of the defendant's representation still open for discussion. Although the court did not canvass the defendant in accordance with Practice Book § 44-3, it nonetheless asked the defendant what motivated his desire to represent himself, to which the defendant stated that he wanted to expedite the matter because he believed the state had no evidence on which to proceed. The court addressed the concern by explaining to the defendant that his attorney needed to obtain the video recording of the incident from the state in order to determine whether to file a motion to dismiss the charges. The court then denied the defendant's request *without prejudice* and granted a continuance of just one week to afford Leaf the opportunity to obtain the video from the state in accordance with the defendant's goals. The court did not advise the defendant that he would need to provide additional facts in support of his request if he reasserted it at a later time. Cf. *State* v. *Braswell*, supra, 318 Conn. 845 (trial court's denial was conclusive where court "conditioned its willingness to reconsider its ruling on seeing some additional support for the motion" (internal quotation marks omitted)). Because the court denied the defendant's request without prejudice, granted a short continuance to permit the defendant to obtain a critical piece of evidence that he was seeking, and explicitly told the defendant that he could reassert this right at any point in the future, his request was not conclusively denied.

The defendant contends that, even if his request to represent himself was not clearly and conclusively denied on May 4, 2017, he did not waive that right because he subsequently reasserted it in a clear and unequivocal manner. Specifically, the defendant claims that he also invoked his right to represent himself during a hearing on September 1, 2017, in four motions that he filed in June and July, 2018, and in another court hearing on July 19, 2018. After carefully considering the events on which the defendant relies, we disagree.

The record reveals that, during a proceeding on September 1, 2017, Leaf represented to the court, *Hon. Susan S. Reynolds*, judge trial referee, that he had received the video recording from the state but, because of his schedule, he had not yet reviewed it with the defendant. He requested a continuance until October 4, 2017, to afford him time to review it with the defendant. Following Leaf's request, the defendant indicated that he was frustrated that Leaf was requesting a lengthy continuance and further complained that Leaf did not file a motion to dismiss the charges. The defendant stated to the court, "[I]t's quite clear he has a lengthy

case load. I need a new counsel, Your Honor." The defendant again maintained that a motion to dismiss should have been filed because the state did not have any evidence to prosecute him. The following colloquy between the defendant and the court ensued:

"The Defendant: Can I have new counsel? . . .

"The Court: [W]hen a defendant comes into this court, says he can't afford counsel, he would like me to appoint counsel for him, I do so. You happen to have one of the most competent attorneys that I appoint for defendants. . . . If you want to make a motion to have Attorney Leaf removed, you're free to do that and at the end of such a hearing, the court may remove Attorney Leaf or may order him to stay. I will tell you that this is not Stop & Shop. We don't try out one product, not like it, return it and pick another. I appointed you an extremely competent attorney. . . . If you don't want Attorney Leaf, that is your prerogative. Your other prerogative is to accept the attorney I appointed for you, to hire your own attorney or to represent yourself. . . .

"The Defendant: Your Honor, I have . . . asked for pro se and I was denied by another judge. I have asked—

"The Court: Okay. Well, then that's the end of that.

"The Defendant: —I would like to reassert that. I would like to reassert my sixth amendment right.

"The Court: You do—file whatever motions you feel appropriate. You will file a motion. . . . If you want to be pro se, file a motion. Whatever judge considered it the first time will reconsider it."

Following that dialogue, there was a discussion on the record as to which judge the defendant had previously appeared. The court then reiterated: "Well, file a motion if you want to represent yourself, and then whatever judge it comes in front of will consider it in light of that. . . . But you've got to file a motion. I can't put a motion down that doesn't exist. You tell me you want an earlier date, but I don't have a motion in the file. I can't put anything down that isn't in the file." Leaf then indicated that he would show the defendant the video prior to the next court date.

As the previous statements reflect, during the proceeding on September 1, 2017, the defendant twice requested that a new attorney be appointed. Those requests were based on his stated frustration with Leaf. After the court denied the defendant's requests for the appointment of new counsel, he told the court that he previously had sought to represent himself, that his request was denied, and that he wished to reassert his sixth amendment right to represent himself.

Because the defendant's statements concerning self-representation were intertwined with a request for new counsel, they were equivocal. As stated previously, "[i]t is well established that [t]he right to counsel and the

right to self-representation present mutually exclusive alternatives. A criminal defendant has a constitutionally protected interest in each, but since the two rights cannot be exercised simultaneously, a defendant must choose between them." (Internal quotation marks omitted.) *State* v. *Pires*, supra, 310 Conn. 230. In viewing the dialogue in its entirety, in which the defendant requested both the appointment of new counsel and to represent himself, we conclude that the defendant did not clearly and unequivocally assert his right to represent himself. See *State* v. *Carter*, supra, 200 Conn. 614 ("[a] trial court, faced with the responsibility of reconciling a defendant's inherently inconsistent rights to self-representation and to counsel, is entitled to await a definitive assertion of a request to proceed [as a self-represented party]").

We also note that the court did not consider the defendant's assertion to be a clear and unequivocal request to proceed as a self-represented party. In an effort to accommodate the defendant's request, the court expressly advised the defendant that, if he wished to proceed as a self-represented party, he would be required to file a motion for that purpose and that it would be docketed specifically for a hearing before the judge he appeared before on May 4, 2017. The defendant did not file a motion, thus, we conclude that the defendant waived his right to represent himself by "remaining silent in the face of the court's express invitation to reassert his right to self-representation." *State* v. *Braswell*, supra, 318 Conn. 843.[3]

The record reflects that from September, 2017 to May, 2018, Leaf continued representing the defendant in pretrial proceedings without further complaint from the defendant. During June and July, 2018, the defendant personally filed four motions. Specifically, on June 11, 2018, the defendant filed a handwritten letter to the clerk of court requesting the court to remove Leaf from his case. The defendant asked for "Attorney Leaf [to] be removed from [his] case and new counsel assigned." On July 2, 2018, the defendant filed a motion to dismiss pursuant to General Statutes § 54-56 and a motion to stay the proceedings, in which he asserted that he does not fully understand criminal trial procedure, the court had deprived him of his right to represent himself, and the court had refused to appoint him new counsel on request. On July 9, 2018, the defendant filed a motion for the removal of appointed counsel and appointment of new counsel in which he asserted that Leaf had provided ineffective assistance throughout the pretrial proceedings. The defendant also expressed that his "mental instability is overwhelming" as a result of a change in his medication regime.

Our careful review of these motions leads us to conclude that they did not reflect a clear and unequivocal assertion of the right to self-representation. Although

in one of the motions, the defendant referred to the fact that the court had not permitted him to represent himself, the motion cannot reasonably be construed as a renewal of a request to represent himself. To the contrary, the motions set forth requests for the appointment of new counsel.

On July 19, 2018, the trial court, *Russo, J.*, held a hearing on the motion for removal of appointed counsel and appointment of new counsel. The defendant told the court, "When I asked to go pro se, I was wrongfully denied. When I asked for new appointment of counsel, I was wrongfully denied. I'm being forced with counsel with—without being requested for it. Nowhere in the world does it say I have to take counsel." Leaf told the court that he thinks "to . . . remain as [the defendant's] attorney would be to do him a disservice and be violative of his due process rights" and asked the court to appoint a special public defender to replace him based on the breakdown of the attorney-client relationship. The court asked the defendant if he would be objecting if the court removed his attorney and appointed him a new one, to which he responded, "[N]o." The court also addressed the defendant's mental health and, after hearing from the defendant, noted "I certainly believe as he sits here today in the limited amount of conversation we had that he could assist any attorney in his own defense, and I also believe he understands the charges against him . . . and I also think he can make a knowing and voluntary choice as to whether he would like Mr. Leaf to remain as his counsel." Accordingly, the court granted Leaf's oral motion to withdraw as counsel and ordered the Office of Public Defender Services to appoint a new public defender. At the next appearance, Attorney Jeff Hutcoe appeared on behalf of the defendant and represented the defendant throughout the trial without any recorded complaint.

At the July 19, 2018 hearing, the defendant referred to the fact that, at a prior time during the proceedings, he had not been permitted to represent himself. This reference to a past ruling, however, cannot be construed as a renewal of an earlier request to represent himself or an expression of a present desire to proceed in a self-represented capacity. Our interpretation of the defendant's remarks is further supported by the fact that, later at that hearing, he explicitly told the court that he would not object to the appointment of new counsel, and new counsel thereafter was appointed without complaint from the defendant.

Because the defendant, in his motions and during the July 19, 2018 court hearing, made simultaneous requests to represent himself and to have a new attorney appointed, these instances are not clear and unequivocal assertions of the right to self-representation. See *State* v. *Pires*, supra, 310 Conn. 231–32. Moreover, dur-

ing the July 19, 2019 proceeding, he clearly and unequivocally represented to the court that he did not object to having new counsel appointed on his behalf. Accordingly, the defendant was appointed new counsel who represented him throughout his trial, and, we reiterate, he never again asserted the right to self-representation.

To the extent that the defendant claims that he requested to represent himself on May 4, 2017, the court did not conclusively deny that request. During the remainder of the proceedings, the defendant did not clearly and unequivocally reassert the right to self-representation. Accordingly, the defendant waived his right to represent himself.

## II

The defendant next claims that the court abused its discretion by admitting evidence of the defendant's prior uncharged misconduct. The defendant argues that the evidence of uncharged misconduct was inadmissible because it was not relevant to show intent, motive, or the absence of mistake, and that, even if the evidence was relevant, it was unduly prejudicial. Because we conclude that the defendant waived this claim at trial, we decline to reach its merits.

The following additional facts are relevant to the resolution of this claim. On December 7, 2018, the state filed a motion for admission of other crimes, wrongs or acts evidence, seeking to introduce evidence of two past acts; the first occurring in May, 2012, and the second in October, 2013, in which the defendant spat at police and correction officers. On January 2, 2019, the defendant filed a motion in limine seeking to preclude the introduction of the evidence of the defendant's uncharged misconduct on the ground that its prejudicial effect outweighed its probative value.[4] Further, the defendant sought notice from the state regarding whether the state intended to produce any other evidence of uncharged misconduct. On January 22, 2019, the state filed a motion for admission of other crimes, wrongs or acts evidence and, again, gave notice of its intent to introduce evidence of the defendant's uncharged misconduct related to the May, 2012 and October, 2013 incidents in order to "establish intent, motive and state of mind of the defendant."

On February 8, 2019, the court, *Pavia, J.*, held a pretrial hearing to address the admissibility of the evidence related to instances of prior uncharged misconduct.[5] At the hearing, defense counsel stated, "I understand there's an argument to be made on relevance, you know, the case-in-chief, where lack of mistake, intent on spitting, that does not require a door opened . . . . I agree that it's—it's relevant for the state to show that, in the past, [the defendant] has spit . . . because it goes to relevancy on . . . numerous grounds, absence of mistake, intent, motive, all these

things. I get that. . . . My concern became more collateral . . . . Now, that . . . could be probably remedied by no one gets to talk about dates. . . . So, if all this stuff comes in just to establish that he will spit, it does tend to paint a bad picture of him. I'm not saying it—it's an unfair painting of it, but it's unfairly prejudicial in the context of a trial . . . . I understand the . . . argument about the need for the state to establish intent through prior incidents of spitting. . . . [M]y argument then became, if there's a limited number, the ones closest in time create the least damage . . . ." The state told the court that it was planning to introduce evidence of the May, 2012 incident, during which the defendant spat at a police officer on the street. Defense counsel responded, "Notwithstanding my concession that a . . . certain amount of them should . . . come in and are relevant, the very—the most salient concern I have is the one that involves a complete outside-of-jail incident [in May, 2012] . . . in the streets of Torrington . . . ." He continued, "[W]hile I say I have no problem with the . . . dates, I'm not saying that I think it should be four or five or six. I think maybe two would be enough for me."

The court asked the state to narrow its request to five prior acts it wanted to produce at trial. Defense counsel did not object to any of these instances other than wanting to limit the total number of past instances admitted and to exclude certain dates. The court found the evidence relating to three prior instances admissible solely to establish intent, motive, and common scheme. The court precluded misconduct evidence relevant to all other incidents, including the May, 2012 incident.

During trial, Correction Officer Michael McLeod testified that, while he was on duty at Northern Correctional Institute, the defendant attempted to spit on him through the safety trap of his cell. Correction Officer Swan testified that, during a prior incident, the defendant spat on Swan's arm. Swan further testified that he covered the defendant's mouth during the incident in question because he was aware that the defendant had a "history" of spitting. During the portion of Swan's testimony regarding the defendant's history, defense counsel stated, "Objection to—we've already discussed it . . . I'll just leave it alone." Additionally, the parties entered a stipulation detailing Correction Officer Tony Vitale's testimony that, on a different occasion while Vitale was collecting trash, the defendant spat in his direction but did not make contact with Vitale.

The defendant now argues on appeal that the trial court erred by admitting the evidence regarding the prior instances of misconduct. The state argues that the defendant waived his objection to the admission of this evidence. We agree with the state.

"[W]aiver is [t]he voluntary relinquishment or abandonment—express or implied—of a legal right or

notice. . . . In determining waiver, the conduct of the parties is of great importance. . . . [W]aiver may be effected by action of counsel. . . . When a party consents to or expresses satisfaction with an issue at trial, claims arising from that issue are deemed waived and may not be reviewed on appeal. . . . Thus, [w]aiver . . . involves the idea of assent, and assent is an act of understanding." (Emphasis omitted; internal quotation marks omitted.) *State* v. *Lynch*, 123 Conn. App. 479, 490, 1 A.3d 1254 (2010).

In the present case, defense counsel conceded at the hearing on the motion to preclude evidence that the prior instances were relevant for showing intent, motive, and a common scheme. In fact, he suggested to the court that a limited number of those instances were admissible. Additionally, he made no objection to any of the evidence of prior instances during trial. As a result, the defendant is precluded from claiming that the trial court erred by admitting the evidence regarding the prior instances of misconduct.[6]

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The defendant is now known as Kyle Lamar Paschal-Barros.

[2] During the next hearing on May 11, 2017, Leaf stated to the court, "Your Honor, just having discussions with my client this morning I've come to the conclusion that I have to make a motion under [General Statutes §] 54-56d to have [the defendant's] competency evaluated to determine whether or not he understands the proceedings against him or whether or not he can assist with his defense." On May 16, 2017, the court ordered an examination of the defendant's competency. The defendant was found competent to stand trial and appeared before the court again on July 6, 2017.

[3] On September 1, 2017, Judge Reynolds continued the defendant's case to September 13, 2017, but the record reflects that the defendant did not appear before the court because he had already been transported back to the correctional facility in which he was incarcerated. Leaf represented on the record that he had visited him at the correctional facility on the previous day and that both he and the defendant had been under the impression that the defendant's next court date was October 4, 2017, so the court continued the case to that date. No motions had been filed by the defendant.

[4] The defendant filed only one motion in limine to preclude evidence related to these two prior acts.

[5] During the hearing, the parties referred to several additional instances of prior uncharged misconduct and agreed that these instances were "attached to the motion of intent to offer uncharged misconduct."

[6] The defendant also argues that the admission of the uncharged misconduct evidence constituted plain error. The request for us to find plain error is, at least, complicated by the fact that the claim itself was waived. "This court has adhered to the view that waiver thwarts a finding that plain error exists." (Internal quotation marks omitted.) *State* v. *Carrasquillo*, 191 Conn. App. 665, 704, 216 A.3d 782, cert. denied, 333 Conn. 930, 218 A.3d 69 (2019); see also *State* v. *Bialowas*, 160 Conn. App. 417, 430, 125 A.3d 642 (2015), remanded, 325 Conn. 917, 163 A.3d 1204 (2017). Nonetheless, our Supreme Court has observed that "there appears to be some tension in our appellate case law as to whether reversal on the basis of plain error could be available in cases where the alleged error is causally connected to the defendant's own behavior." *State* v. *Darryl W.*, 303 Conn. 353, 371–72 n.17, 33 A.3d 239 (2012); see also *State* v. *McClain*, 324 Conn. 802, 805, 812, 155 A.3d 209 (2017) (waiver of claim of instructional error under *State* v. *Kitchens*, 299 Conn. 447, 10 A.3d 942 (2011), does not "necessarily foreclose" or "preclude" reviewing court from affording relief under plain error doctrine).

Even if we should accept the defendant's invitation to conclude that plain error exists in the present case, this claim fails. First, the defendant fails to show a patent or readily discernable error on behalf of the trial court. As defense counsel correctly noted, evidence of prior uncharged misconduct

may be admitted to prove "intent, identity, malice, motive, common plan or scheme, absence of mistake or accident, knowledge, a system of criminal activity, or an element of the crime, or to corroborate crucial persecution testimony." Conn. Code Evid. § 4-5 (c). Second, "[t]he plain error doctrine is reserved for truly extraordinary situations [in which] the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . [I]n addition to examining the patent nature of the error, the reviewing court must examine that error for the grievousness of its consequences in order to determine whether reversal under the plain error doctrine is appropriate. A party cannot prevail under plain error unless it has demonstrated that the failure to grant relief will result in manifest injustice. . . . An appellant cannot prevail . . . unless he demonstrates that the claimed error is *both* so clear *and* so harmful that a failure to reverse the judgment would result in manifest injustice." (Citation omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Cane*, 193 Conn. App. 95, 126, 218 A.3d 1073, cert. denied, 334 Conn. 901, 219 A.3d 798 (2019). In the present case, the defendant has not demonstrated that the court erred, let alone that it committed an error so clear and so harmful as to constitute a manifest injustice.