******************************************************

The "officially released" date that appears near the
beginning of an opinion is the date the opinion will be
published in the Connecticut Law Journal or the date it
is released as a slip opinion. The operative date for the
beginning of all time periods for the filing of postopinion
motions and petitions for certification is the "officially
released" date appearing in the opinion.

All opinions are subject to modification and technical
correction prior to official publication in the Connecti-
cut Law Journal and subsequently in the Connecticut
Reports or Connecticut Appellate Reports. In the event
of discrepancies between the advance release version of
an opinion and the version appearing in the Connecticut
Law Journal and subsequently in the Connecticut Reports
or Connecticut Appellate Reports, the latest version is
to be considered authoritative.

The syllabus and procedural history accompanying an
opinion that appear in the Connecticut Law Journal and
subsequently in the Connecticut Reports or Connecticut
Appellate Reports are copyrighted by the Secretary of the
State, State of Connecticut, and may not be reproduced
or distributed without the express written permission of
the Commission on Official Legal Publications, Judicial
Branch, State of Connecticut.

******************************************************

## STATE OF CONNECTICUT *v.* JOSE ANTONIO LOPEZ
## (AC 48118)

Cradle, C. J., and Elgo and Moll, Js.

*Syllabus*

Convicted, after a jury trial, of various crimes, including assault of public safety personnel, the defendant appealed to this court. He claimed that the trial court improperly violated his right to self-representation under the sixth amendment to the United States constitution when it denied his motion to represent himself. *Held*:

The trial court did not violate the defendant's right to self-representation in denying his motion, as the defendant's request during the hearing on the motion was not clear and unequivocal because he vacillated between his request for self-representation and for new counsel, his statements to the court were intertwined with various requests that were unrelated to or contradictory to his motion, and the hearing culminated in the defendant agreeing to proceed with new counsel.

Argued November 17, 2025—officially released January 20, 2026

*Procedural History*

Substitute information in two cases charging the defendant, in the first case, with two counts of the crime of assault of public safety personnel and with one count of the crime of assault in the first degree, and in the second case with the crime of evasion of responsibility in the operation of a motor vehicle, brought to the Superior Court in the judicial district of Hartford, geographical area number fourteen, and transferred to the judicial district of New Britain; thereafter, the court, *Keegan, J.*, denied the defendant's motion to proceed in a self-represented capacity; subsequently, the cases were tried to the jury before *Pelosi, J.*; verdicts and judgments of guilty, from which the defendant appealed to this court. *Affirmed*.

*Matthew C. Eagan*, assigned counsel, for the appellant (defendant).

*Myah Bassett*, certified legal intern, with whom were *Meryl R. Gersz*, assistant state's attorney, and, on the brief, *Christian A. Watson*, state's attorney, and *David Clifton*, senior assistant state's attorney, for the appellee (state).

*Opinion*

ELGO, J. The defendant, Jose Antonio Lopez, appeals from the judgments of conviction, rendered after a jury trial, of one count of assault in the first degree in violation of General Statutes § 53a-59 (a) (1),[1] two counts of assault of public safety personnel in violation of General Statutes § 53a-167c (a) (1),[2] and one count of evasion of responsibility in the operation of a motor vehicle in violation of General Statutes § 14-224 (b) (1).[3] On appeal, the defendant claims that the trial court improperly violated his right to self-representation under the sixth amendment to the United States constitution.[4] We disagree and affirm the judgments of the court.

[1] General Statutes § 53a-59 provides in relevant part: "(a) A person is guilty of assault in the first degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person . . . ."

[2] General Statutes § 53a-167c provides in relevant part: "(a) A person is guilty of assault of public safety . . . personnel when, with intent to prevent a reasonably identifiable [public safety personnel] from performing his or her duties, and while such [public safety personnel] is acting in the performance of his or her duties, (1) such person causes physical injury to such [public safety personnel] . . . ."

[3] General Statutes § 14-224 provides in relevant part: "(b) (1) Each operator of a motor vehicle who is knowingly involved in an accident which causes serious physical injury . . . to any other person shall at once stop and render such assistance as may be needed and shall give such operator's name, address and operator's license number and registration to the person injured or to any officer or witness to the serious physical injury to person. . . ."

[4] The defendant also claims that he did not waive his right to self-representation by proceeding to trial with newly appointed counsel and that the court's denial of his right to self-representation constituted structural error. In light of our conclusion that the defendant did not clearly and unequivocally invoke his right to self-representation, we need not address those alternative claims. See *State* v. *Benson*, 235 Conn. App. 594, 602 n.12, 346 A.3d 55 (2025).

The facts underlying the defendant's arrest are not in dispute. On March 2, 2020, the defendant entered the Superior Court in Manchester in response to an arrest warrant for violation of probation for crimes unrelated to this appeal. Judicial Marshal Michael West directed the defendant to wait outside the probation intake office window for his probation officer. West turned away briefly, and the defendant exited the courthouse through an emergency exit. West and another judicial marshal, Martin Brown, followed the defendant to the parking lot. The defendant entered and started his vehicle and was sitting in the driver's seat when West approached. West spoke with the defendant and encouraged him to return to the court to speak with a probation officer. The defendant ignored him and drove away, striking both West and Brown with his vehicle. The defendant subsequently was arrested and charged with one count of assault in the first degree, two counts of assault of public safety personnel, and one count of evading responsibility in the operation of a motor vehicle.

On August 5, 2021, the defendant filed a motion to proceed in a self-represented capacity. On September 17, 2021, the court held a hearing regarding the defendant's motion. At the hearing, defense counsel stated, "[the defendant] simply wants to represent himself. He wants me to act as a standby counsel." After a brief discussion, the court ultimately rescheduled the hearing because the prosecutor assigned to the case was unavailable. On September 30, 2021, the court held a hearing regarding the defendant's motion. At the hearing, Attorney Dennis McMahon represented the defendant and Attorney Christian Watson represented the state. The following colloquy occurred:

"The Court: . . . The first thing I need to know from you . . . is whether or not you understand that you have

a constitutional right to be represented in these cases by an attorney?

"The Defendant: I do, Your Honor.

"The Court: And you are telling me today [that] you want to represent yourself. Is that correct?

"The Defendant: Yes. And if you could allow me to explain why briefly, Your Honor?

"The Court: Actually, what I have to do is ask you a series of questions and hopefully that will become apparent during this series of questions. All right?

"The Defendant: Okay.

"The Court: Thank you.

"The Defendant: Your Honor, I believe I have additional questions related to the case. I'm pretty much sure will not intervene with your professionalism as a judge.

"The Court: I'm a little confused. I'm not sure what you are saying.

"The Defendant: I have questions that—obviously, I know you are not allowed to give me legal advice, and not pertaining to any legal advice.

"The Court: That's correct.

"[Defense Counsel]: Your Honor, before we continue on, as I'm still his attorney, my firm advised him not to discuss.

"The Defendant: No. I don't want you as my attorney anymore. I don't even want you as my standby counsel anymore."

The court then asked the defendant a series of questions regarding his education, background and trial experience, the charges he faced, the maximum penalties, and the state's burden of proof. The defendant answered all the questions and stated that he understood the charges, penalties, and the state's burden of proof. The defendant added that the charges were based on statements

he made to detectives during their investigation. The court continued:

"The Court: . . . [W]e are really getting off the path that we need to be on right now. So, if you could just stick with me. . . . [D]uring a trial, there are motions that are going to be filed. And there are going to be motions that if you don't handle them properly, you could have adverse consequences. . . . Just because you represent yourself doesn't mean the judge . . . tells you what to do. Do you understand that?

"The Defendant: Yes, Your Honor. But if I could get a new attorney appointed . . . to me then that would resolve the issue.

"The Court: Wait a minute. I thought you wanted to represent yourself. Now you are telling me this is . . . just about you want[ing] a new attorney?

"The Defendant: Okay. I'll stick to representing myself, Your Honor. I'll stick to that. I mean, it makes sense. The case is based on what I told the detectives during the investigation. Now, if I was a juror in this case—

"The Court: . . . [N]obody gets the chance to be a juror on their own case."

The defendant clarified that he would like to speak on his own behalf at trial to explain certain self-incriminating statements he made to the police detectives, and not have those statements be explained through defense counsel. The court said that the defendant could do so by testifying at his own trial, which did not require him to represent himself. The defendant responded that he would not like to take the stand at trial, as he worried that the prosecution would attack his credibility.

The court continued its canvass, questioning whether the defendant was familiar with the rules of procedure and evidence that govern criminal cases. The defendant explained that he was familiar with both procedural and evidentiary rules through reading the Connecticut Practice Book and the Federal Rules of Evidence. The court

noted that the federal rules were not applicable in state court, and the defendant stated that the federal rules gave him "a general idea." The court then continued its canvass:

"The Court: All right. That's what you think. Okay. Do you understand that the rules of procedure and the rules of evidence apply even when the defendant represents himself without the assistance of counsel?

"The Defendant: Yes, Your Honor.

"The Court: Do you understand that the court cannot give you legal advice in conducting your defense?

"The Defendant: Yes, Your Honor.

"The Court: Do you understand that what you say and do during a trial can affect the outcome of an appeal or other postconviction remedy in the event that you are found guilty?

"The Defendant: Yes, Your Honor.

"The Court: Do you understand that a competent, trained attorney possesses the skill and training to defend and protect your rights, to address the issues, to understand the strengths and weaknesses in the prosecution's case, to make the appropriate objections to evidence, and to preserve the record in the event of conviction for purposes of appeal and otherwise?

"The Defendant: Yes, Your Honor.

"The Court: Do you feel . . . that you have the training, experience, and skill?

"The Defendant: Your Honor, I would agree that an attorney in any event on any day can do a far better job than I can. But what do you do when you are appointed counsel that's already conflicted and has a conflict of interest that you are guilty? . . .

"The Court: Okay. Then what you do is you come to the court, and you say, I'm having a conflict with my

attorney. And then the court determines whether or not another attorney should be appointed for you. Have you ever had another attorney before Mr. McMahon?

"The Defendant: I have not, Your Honor.

"The Court: Do you maybe want to file a new motion? Do you really want to represent yourself? This is not a game. You could face ninety years [of incarceration]. Do you really want to represent yourself or do you want to work with another attorney?

"The Defendant: I'm going to work with another attorney.

"The Court: Then tell me that up front . . . ."

The court then explained to the defendant that he may not like what his new attorney has to say and encouraged the defendant to sit with his new attorney's advice regarding the strength of his case and trial strategy. The court asked whether McMahon believed the attorney-client relationship had broken down, and McMahon said he would defer to the court's decision on whether to assign the defendant new counsel. The defendant asked whether he had a right to obtain copies of the documents in his case, to which the court responded that he had a right to review them with his attorney. When the defendant then asked about his right to a speedy trial, the following colloquy occurred:

"The Court: Do you think your brand new attorney is going to want to do a speedy trial? I mean, I know you want to. But do you think a brand new attorney who doesn't know anything about your case is going to want to do a speedy trial? And yes, we are doing trials.

"The Defendant: Speedy trials?

"The Court: Oh, yes, sir.

"The Defendant: Okay. So, I would like to represent myself and go to speedy trial.

"The Court: No. No. No. No. This is not a Chinese menu that you pick and choose what you want. You told me you wanted a new attorney. I'm getting a new attorney. You want a speedy trial, you could stick with [defense counsel]. He knows your case. But based on what I've heard, you do not have the competence and the training and experience to represent yourself in a criminal case with these serious charges. You do not. So, I am not going to let you represent yourself. I am denying that motion. . . .

"The Defendant: So, what have I said or done to make you feel . . . that I am not competent to represent myself?

"The Court: Because you don't possess the legal training and experience. You've never been in a trial before. You don't know anything about trials.

"The Defendant: I know how it goes. I go. The prosecution goes.

"The Court: No, it's not that easy . . . . All right. . . . [I]t's now ten after eleven. I have a roomful of people here. I've denied your motion to self-represent. I've asked all of the questions. Now, if you want a new attorney, I'm happy to appoint you a new attorney. If you want to stay with [defense counsel], Attorney McMahon will continue to work with you if that's what you want: a speedy trial.

"[Defense Counsel]: Your Honor, I do believe now that it's probably [for] the best if he does get another attorney.

"The Court: Okay. All right. Very good.

"The Defendant: Why can I not get a speedy trial, Your Honor? Why can I not?

"The Court: First of all, you don't have an attorney. I need to appoint you an attorney. Second of all, that attorney is going to need time to get up to speed on your files to be able to understand the nature of the evidence

against you, to talk with you, to do whatever investigation you want done.

"The Defendant: That sounds reasonable. That sounds reasonable giving it a second thought.

"The Court: Thank you."

The court denied the defendant's motion to proceed in a self-represented capacity. The defendant then proceeded to trial with his new attorney and the defendant "neither made additional requests to represent himself nor expressed any dissatisfaction with his new attorney." Following a jury trial, the defendant was convicted on all counts. On April 17, 2024, the court sentenced the defendant to a total effective sentence of twenty-five years of incarceration, five of them mandatory, and five years of special parole. This appeal followed.

On appeal, the defendant claims the court deprived him of his right to self-representation when it denied his clear and unequivocal request to represent himself. Because we conclude that the defendant's request was not clear and unequivocal, we disagree.

The sixth amendment, as made applicable to the states through the due process clause of the fourteenth amendment to the United States constitution, provides in relevant part: "In all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense." U.S. Const., amend. VI. "[T]he sixth amendment embodies a right to self-representation and that a defendant in a state criminal trial has a constitutional right to proceed *without* counsel when he voluntarily and intelligently elects to do so." (Emphasis in original; internal quotation marks omitted.) *State* v. *Flanagan*, 293 Conn. 406, 417, 978 A.2d 64 (2009).

"It is well established that [t]he right to counsel and the right to self-representation present mutually exclusive alternatives. A criminal defendant has a constitutionally protected interest in each, but since the two rights cannot be exercised simultaneously, a defendant must

choose between them. When the right to have competent counsel ceases as the result of a sufficient waiver, the right of self-representation begins. . . . Put another way, a defendant properly exercises his right to self-representation by knowingly and intelligently waiving his right to representation by counsel. . . .

"State and federal courts consistently have discussed the right to self-representation in terms of invoking or asserting it . . . and have concluded that there can be no infringement of the right to self-representation in the absence of a defendant's proper assertion of that right. . . . The threshold requirement that the defendant clearly and unequivocally invoke his right to proceed [as a self-represented party] is one of many safeguards of the fundamental right to counsel. . . . Accordingly, [t]he constitutional right of self-representation depends . . . upon its invocation by the defendant in a clear and unequivocal manner. . . . In the absence of a clear and unequivocal assertion of the right to self-representation, a trial court has no independent obligation to inquire into the defendant's interest in representing himself . . . . Conversely, once there has been an unequivocal request for self-representation, a court must undertake an inquiry [pursuant to Practice Book § 44-3], on the record, to inform the defendant of the risks of self-representation and to permit him to make a knowing and intelligent waiver of his right to counsel. . . . The inquiry mandated by . . . § 44-3 is designed to ensure the knowing and intelligent waiver of counsel that constitutionally is required." (Footnote omitted; internal quotation marks omitted.) *State* v. *Trice*, 235 Conn. App. 203, 241–42, 345 A.3d 433, cert. denied, 353 Conn. 927, 346 A.3d 512 (2025).

"Although a clear and unequivocal request is required, there is no standard form it must take. [A] defendant does not need to recite some talismanic formula hoping to open the eyes and ears of the court to [that] request. Insofar as the desire to proceed [as a self-represented party] is concerned, [a defendant] must do no more than

state his request, either orally or in writing, unambiguously to the court so that no reasonable person can say that the request was not made. . . . Moreover, it is generally incumbent upon the courts to elicit that elevated degree of clarity through a detailed inquiry. That is, the triggering statement in a defendant's attempt to waive his right to counsel need not be punctilious; *rather, the dialogue* between the court and the defendant must result in a clear and unequivocal statement. . . .

"Finally, in conducting our review, we are cognizant that the context of [a] reference to self-representation is important in determining whether the reference itself was a clear invocation of the right to self-representation. . . . The inquiry is fact intensive and should be based on the totality of the circumstances surrounding the request . . . which may include, inter alia, whether the request was for hybrid representation . . . or merely for the appointment of standby or advisory counsel . . . the trial court's response to a request . . . whether a defendant has consistently vacillated in his request . . . and whether a request is the result of an emotional outburst . . . .

"When a defendant's assertion of the right to self-representation is not clear and unequivocal, recognition of the right becomes a matter entrusted to the exercise of discretion by the trial court. . . . In the exercise of that discretion, the trial court must weigh into the balance its obligation to indulge in every reasonable presumption against waiver of the right to counsel." (Citation omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Paschal*, 207 Conn. App. 328, 334–35, 262 A.3d 893, cert. denied, 340 Conn. 902, 263 A.3d 387 (2021), cert. denied,    U.S.    , 142 S. Ct. 1395, 212 L. Ed. 2d 341 (2022).

The defendant asserted his right to self-representation in both his August 5, 2021 motion and at the beginning of the hearing on that motion. During the court's canvass of the defendant, however, he vacillated on this request numerous times. He first vacillated when, in response to the court's question, he said that a new

attorney would resolve his issue. The court paused its canvass and questioned whether he wanted to represent himself or whether he wanted a new attorney, and the defendant vacillated again and said that he would proceed in a self-represented capacity. The court continued its canvass, and the defendant admitted that an attorney would be better equipped to handle his trial. He then stated that he would "work with another attorney." The defendant vacillated twice more, asserting his right to self-representation and, finally, agreeing to have new counsel appointed.

The defendant also intertwined his statements concerning self-representation with other requests. Notably, the defendant seemed to conflate his right to self-representation with the right to testify on his own behalf at trial. The defendant, likewise, intertwined his right to self-representation with his right to a speedy trial. At the hearing regarding his right to self-representation, he also requested that he be able to review all the documents regarding his criminal trial.

It is clear from our careful review of the transcript of the September 30, 2021 hearing that the defendant vacillated between his request for self-representation and for new counsel approximately five times. At the end of that hearing, the defendant agreed to proceed with new counsel and agreed with the court that the decision was "reasonable." Furthermore, the defendant's statements concerning self-representation were intertwined with various requests that were unrelated or contradictory, including a request for new counsel, a request to testify on his own behalf, a request for speedy trial, and a request to review documents relating to his criminal trial. Thus, on the basis of our careful review of the entire dialogue between the court and the defendant, we conclude that the defendant did not clearly and unequivocally assert his right to self-representation. See *State* v. *Paschal*, supra, 207 Conn. App. 341 (concluding that defendant's intertwined requests concerning self-representation and new counsel did not constitute clear and unequivocal

assertion of right to self-representation); *Quint* v. *Commissioner of Correction*, 99 Conn. App. 395, 404–405, 913 A.2d 1120 (2007) (defendant's "vacillation between the options of proceeding [as a self-represented party] or with counsel" does not "constitute a clear and unequivocal invocation of the right to self-representation").

The judgments are affirmed.

In this opinion the other judges concurred.