STATE OF CONNECTICUT *v.*
MICHAEL A. HOLBROOK
(AC 25771)

Flynn, C. J., and Lavine and Foti, Js.

Argued May 24—officially released September 12, 2006

*Alice M. Osedach*, assistant public defender, for the appellant (defendant).

*C. Robert Satti, Jr.*, senior assistant state's attorney, with whom, on the brief, was *Jonathan C. Benedict*, state's attorney, for the appellee (state).

Opinion

FOTI, J. On December 8, 1996, John Fred Dean was shot and killed inside a Bridgeport nightclub known as the Factory. The state charged the defendant, Michael A. Holbrook, with Dean's murder. In 2003, the defendant's first jury trial ended in a mistrial. After a second trial, in 2004, the jury found the defendant not guilty of murder but found him guilty of the lesser included offense of manslaughter in the first degree with a firearm in violation of General Statutes § 53a-55a (a). The jury also made a finding that the defendant had committed a class A, B or C felony with a firearm in violation of General Statutes § 53-202k. The trial court rendered judgment in accordance with the verdict and sentenced the defendant to a total effective term of thirty-five years incarceration. The defendant now appeals from the judgment of conviction, claiming that the court improperly (1) conducted a hearing with an incarcerated witness in the courthouse cell block, (2) permitted that witness to testify as to why he feared for his safety, (3) restricted the scope of cross-examination of that witness and (4) admitted into evidence the written statements of three other witnesses. We affirm the judgment of the trial court.

I

The defendant first claims that the court improperly conducted a hearing with an incarcerated witness in the courthouse cell block. The witness, Demetrius Brown, had been transported to the courthouse in order to testify for the state at the defendant's trial but refused to leave the cell block and to be escorted to the courtroom because he feared for his safety. After Brown physically resisted an attempt to remove him from his cell, the court decided to visit the cell block with the courtroom clerk, the court monitor, the prosecutor and defense counsel but denied the defendant's request to be present. In the cell block, the court found Brown in contempt and imposed a six month term of imprisonment. The defendant claims that the court's contempt proceeding against Brown in the cell block deprived the defendant of (1) the right to a public trial and (2) the right to be present. We disagree with both parts of his claim.

A

As to the first part of the defendant's claim, which is that the court denied him the right to a public trial, "[a] defendant's right to a public trial is guaranteed in all criminal proceedings by the sixth amendment to the United States constitution. . . . This right is made applicable to the states through the fourteenth amendment . . . and also is encompassed in article first, § 8, of the Connecticut constitution. . . . Public trials vindicate an important public interest in the judicial system and help ensure testimonial trustworthiness. . . . Openness of a criminal trial enhances both its basic fairness and the appearance of fairness, which is essential to public confidence in the system. . . . The right to a public trial, however, is not absolute. . . . An accommodation must sometimes be made between the individual's right to a public trial and other societal

interests that might justify closing the courtroom to the public. . . . In light of these concerns, a court's power to order a closure of the courtroom should be sparingly exercised, and limited to those situations where closure is demonstrably necessary to further the administration of justice." (Internal quotation marks omitted.) *State* v. *Eric M.*, 79 Conn. App. 91, 96–97, 829 A.2d 439 (2003), aff'd, 271 Conn. 641, 858 A.2d 767 (2004).

In the present case, the court's contempt proceeding against Brown in the cell block did not constitute a closure of the courtroom and did not implicate the defendant's right to a public trial. The court decided to conduct the proceeding in the cell block because Brown had resisted appearing in the courtroom to testify. In making its decision, the court considered the disruption that could have accompanied the forcible removal of Brown from his cell. Because the proceeding concerned Brown, not the defendant, and related to Brown's conduct, not the charges against the defendant, it did not affect the defendant's right to a public trial.

B

As to the second part of the defendant's claim, which is that the court denied him the right to be present, "a criminal defendant has a constitutional right to be present at all critical stages of his or her prosecution. . . . Although the constitutional right to be present is rooted to a large extent in the confrontation clause of the sixth amendment, courts have recognized that this right is protected by the due process clause in situations when the defendant is not actually confronting witnesses or evidence against him. . . . In judging whether a particular segment of a criminal proceeding constitutes a critical stage of a defendant's prosecution, courts have evaluated the extent to which a fair and just hearing would be thwarted by [the defendant's]

absence or whether his presence has a relation, reasonably substantial, to the [fullness] of his opportunity to defend against the charge." (Citations omitted; internal quotation marks omitted.) *State* v. *Lopez*, 271 Conn. 724, 732, 859 A.2d 898 (2004).

In the defendant's view, if he had been present at the contempt proceeding against Brown, he would have been able to assist with his attorney's preparation for cross-examination of Brown as to why he feared testifying. On the basis of our review, we determine that the defendant's presence would have been of minimal importance to his defense and that the proceeding did not constitute a critical stage of his prosecution. The proceeding concerned Brown, not the defendant, and therefore the defendant's absence did not affect the fairness of the proceeding. For the same reason, the defendant's presence would not have had a reasonably substantial relationship to the fullness of his opportunity to defend himself. We therefore reject the defendant's claim.

II

The defendant next claims that the court improperly permitted Brown to testify as to why he feared for his safety. We disagree.

Brown witnessed the shooting of the victim, Dean, and provided a written statement to the police approximately ten months later. He agreed to testify after the court had found him in contempt for refusing to leave the courthouse cell block. Defense counsel cross-examined him regarding the time at which he had arrived at the Factory on the night of Dean's shooting. Brown then testified that he felt nervous. When defense counsel asked him to explain whether he felt nervous in the courtroom or only when he had given his written statement, he replied: "Both." Defense counsel again asked him whether he felt nervous in the courtroom,

and he replied that he did. Defense counsel then stated: "Well, just look at me and see if you can block out everybody else in this room, okay?"

Thereafter, Brown informed the court during a recess that he felt intimidated by a spectator in the courtroom. The court then excluded that spectator from the trial. On redirect examination, the prosecutor asked Brown whether the spectator who had been excluded had intimidated him, and Brown answered: "Yes." Defense counsel then objected on relevance grounds. The court overruled the objection but granted defense counsel's request for a limiting instruction. The court told the jury: "I want to make it clear to the . . . jury, that . . . there's no evidence . . . that the defendant in any way participated [in] or encouraged [the intimidation of Brown]. That's all I can say to you." Brown then testified that the spectator "shook his head, like he gonna get me."

"Generally, a party who delves into a particular subject during the examination of a witness cannot object if the opposing party later questions the witness on the same subject. . . . The party who initiates discussion on the issue is said to have opened the door to rebuttal by the opposing party. Even though the rebuttal evidence would ordinarily be inadmissible on other grounds, the court may, in its discretion, allow it where the party initiating inquiry has made unfair use of the evidence." (Internal quotation marks omitted.) *State* v. *Powell*, 93 Conn. App. 592, 599, 889 A.2d 885, cert. denied, 277 Conn. 924, 895 A.2d 797 (2006).

It is clear from the transcript that defense counsel delved into the issue of Brown's nervousness and therefore opened the door to rebuttal by the prosecutor. Although the rebuttal evidence may have been inadmissible on other grounds, the court acted within its discre-

tion in permitting the state to question Brown regarding the alleged intimidation.[1]

## III

The defendant next claims that the court improperly precluded him from cross-examining Brown as to his testimony before a federal grand jury in a matter involving drug dealing. We disagree.

"Our standard of review of a claim that the court improperly limited the cross-examination of a witness is one of abuse of discretion. . . . [I]n . . . matters pertaining to control over cross-examination, a considerable latitude of discretion is allowed. . . . The determination of whether a matter is relevant or collateral, and the scope and extent of cross-examination of a witness, generally rests within the sound discretion of the trial court. . . . Every reasonable presumption should be made in favor of the correctness of the court's ruling in determining whether there has been an abuse of discretion. . . .

"The court's discretion, however, comes into play only after the defendant has been permitted cross-examination sufficient to satisfy the sixth amendment [to the United States constitution]. . . . The sixth amendment . . . guarantees the right of an accused in a criminal prosecution to confront the witnesses against

---

[1] The defendant also asserts that (1) the court's limiting instruction was inadequate and (2) the court should have granted his motion for a mistrial on the basis of the challenged testimony. As to the limiting instruction, the defendant did not object to it at trial and has not requested review pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), or the plain error doctrine, codified in Practice Book § 60-5. Accordingly, we decline to review the limiting instruction. As to the motion for a mistrial, our review of the transcript discloses that defense counsel did not move for a mistrial. Defense counsel stated that "if Your Honor is going to allow [Brown to testify as to why he fears for his safety], I'm going to ask for a mistrial." When the court permitted the testimony, however, defense counsel did not move for a mistrial. We therefore have no ruling to review.

him. . . . The primary interest secured by confrontation is the right to cross-examination . . . . As an appropriate and potentially vital function of cross-examination, exposure of a witness' motive, interest, bias or prejudice may not be unduly restricted. . . . Compliance with the constitutionally guaranteed right to cross-examination requires that the defendant be allowed to present the jury with facts from which it could appropriately draw inferences relating to the witness' reliability. . . . [P]reclusion of sufficient inquiry into a particular matter tending to show motive, bias and interest may result in a violation of the constitutional requirements of the sixth amendment. . . . In determining whether such a violation occurred, [w]e consider the nature of the excluded inquiry, whether the field of inquiry was adequately covered by other questions that were allowed, and the overall quality of the cross-examination viewed in relation to the issues actually litigated at trial." (Citations omitted; internal quotation marks omitted.) *State* v. *Hedge*, 93 Conn. App. 693, 697–98, 890 A.2d 612, cert. denied, 277 Conn. 930, 896 A.2d 102 (2006).

The defendant argues that the purpose of cross-examining Brown as to his federal testimony regarding drug dealing was to impeach his credibility. In the defendant's view, if the court had not restricted the cross-examination, he would have been able to show that Brown had testified inconsistently as to drug dealing. Examining the nature of that inquiry, we conclude that it was not relevant to the defendant's trial because Brown's involvement with drug dealing did not relate to the issue at hand, namely, whether the defendant had shot Dean. The defendant's constitutional right to confront Brown therefore was not violated, and the court did not abuse its discretion in precluding the cross-examination.

## IV

The defendant's last claim is that the court improperly admitted into evidence the written statements of (1) Gary Browning, (2) Tawana Allen and (3) Joyel Smith. We disagree.

## A

We first address the written statement of Browning, who was incarcerated at the time of the defendant's trial. Browning witnessed Dean's shooting and provided a statement to the police approximately two and one-half years later, on July 1, 1999. Browning indicated in his statement that Dean "slapped [a woman] and she went and got some dude. They started fighting [Dean] and the dude and [Dean] was beating him up and then the dude shot [Dean]." Browning identified the "dude" as the defendant. At the defendant's trial, Browning testified that he had heard gunshots and had seen muzzle flashes near the defendant's hand, but had not seen a gun. The state then moved to admit into evidence Browning's statement as a prior inconsistent statement pursuant to *State* v. *Whelan*, 200 Conn. 743, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986).[2] The defendant objected that the statement was not inconsistent with Browning's testimony, but the court overruled the objection and admitted the statement into evidence.

"A *Whelan* claim is evidentiary in nature and, accordingly, the defendant bears the burden of establishing that the trial court's erroneous ruling was harmful to him in that it probably affected the outcome of the trial. . . . The admissibility of evidence, including the admissibility of a prior inconsistent statement pursuant

[2] Our Supreme Court has adopted "a rule allowing the substantive use of prior written inconsistent statements, signed by the declarant, who has personal knowledge of the facts stated, when the declarant testifies at trial and is subject to cross-examination." *State* v. *Whelan*, supra, 200 Conn. 753.

to *Whelan,* is a matter within the wide discretion of the trial court. . . . On appeal, the exercise of that discretion will not be disturbed except on a showing that it has been abused." (Internal quotation marks omitted.) *State* v. *Francis,* 90 Conn. App. 676, 685, 879 A.2d 457, cert. denied, 275 Conn. 925, 883 A.2d 1248 (2005).

We conclude that Browning's statement was inconsistent with his testimony because he stated that the defendant had shot Dean, but testified that he had not seen the defendant with a gun. The court did not abuse its discretion in admitting the statement pursuant to *Whelan.*

B

We next address the written statement of Allen, which she provided to the police on July 13, 2000. Allen testified at the defendant's trial that she did not remember whether she had been at the Factory on the night of Dean's shooting and also did not remember giving a statement to the police. The state then sought to introduce Allen's statement into evidence.

Allen indicated in her statement that she had been at the Factory on the night of Dean's shooting and had been standing near him but had had her back turned when he was shot. Allen stated that, after the shooting, "[the defendant] had another guy pinned up against the wall, with his arms in the air and pointing the gun at him. [The defendant] noticed that I was in the room and he turned around, smoke was still coming out [of] the gun, when he turned around, the gun was still in his hand and he noticed who I was . . . ." The defendant objected to that portion of Allen's statement on relevance grounds, arguing that it was more prejudicial than probative. The court overruled the objection, finding that that portion of Allen's statement was not overly prejudicial to the defendant and that the statement

would be less understandable to the jury if it were redacted.

Whether to redact a written statement before admitting it into evidence is a matter of the court's discretion. See *State* v. *Antonio A.*, 90 Conn. App. 286, 296–97, 878 A.2d 358, cert. denied, 275 Conn. 926, 883 A.2d 1246 (2005), cert. denied, 546 U.S. 1189, 126 S. Ct. 1373, 164 L. Ed. 2d 81 (2006). As to the relevance of the portion of Allen's statement that the defendant sought to redact, "[r]elevant evidence is evidence that has a logical tendency to aid the trier in the determination of an issue. . . . All that is required is that the evidence tend to support a relevant fact even to a slight degree, so long as it is not prejudicial or merely cumulative." (Internal quotation marks omitted.) *State* v. *Rodriguez*, 91 Conn. App. 112, 122, 881 A.2d 371, cert. denied, 276 Conn. 909, 886 A.2d 423 (2005); see also Conn. Code Evid. §§ 4-1 through 4-3.

We conclude that the challenged portion of Allen's statement was highly probative because it indicated that the defendant had brandished a smoking gun immediately after Dean had been shot. There was no evidence that anyone else at the nightclub had possessed a gun at the time and could have shot Dean. The court therefore did not abuse its discretion in refusing to redact Allen's statement.

C

Finally, we address the written statement of Smith, which she provided to the police on December 9, 1996, one day after Dean's shooting. The state sought to introduce Smith's statement into evidence after she testified at the defendant's trial that she did not remember giving the statement. According to her statement, Smith had been at the Factory with her friend, Charlene Harrigan, on the night of Dean's shooting. After fighting with several other women, Smith and Harrigan were ejected

from the nightclub and then confronted in the parking lot by those women, who sprayed acid in their faces. A short time later, Smith heard gunshots and then drove Harrigan to a hospital in order to seek treatment for the acid attack.

Smith indicated in her statement that she was acquainted with the defendant. The detective who recorded Smith's statement asked her if she ever had seen the defendant with a gun. Smith replied: "Yes. This past summer. He had a thick silver gun. It wasn't the kind that you put the bullets in it; it had a clip and it keeps shooting, like an automatic. I think it was a Smith and Wesson [because] there's a rap song and it was playing, and in the song they say Smith and Wesson and he was saying the words and pointing to his gun. He usually rides around with the gun on his lap or on the side when he's riding around in his car." The defendant objected to that portion of Smith's statement as irrelevant and too remote because the shooting occurred in December, 1996, and Smith had seen the defendant with a gun in the summer of 1996. The state countered that Smith's references to a "thick silver gun" and the Smith & Wesson name made that portion of her statement relevant because other evidence showed that the gun used to kill Dean was chrome and possibly a Smith & Wesson. The court found that that portion of Smith's statement was more probative than prejudicial and overruled the defendant's objection.

"One fact is relevant to another if in the common course of events the existence of one, alone or with other facts, renders the existence of the other either more certain or more probable. . . . Evidence is irrelevant or too remote if there is such a want of open and visible connection between the evidentiary and principal facts that, all things considered, the former is not worthy or safe to be admitted in the proof of the latter." (Internal quotation marks omitted.) *State* v. *Carpenter*,

275 Conn. 785, 805–806, 882 A.2d 604 (2005), cert. denied, 547 U.S. 1025, 126 S. Ct. 1578, 164 L. Ed. 2d 309 (2006).

Although Smith had seen the defendant with a gun several months before Dean's shooting, her statement as to that gun was relevant to the issue of whether the defendant's gun was the same gun that was used to kill Dean. We conclude that the court did not abuse its discretion in refusing to redact the challenged portion of Smith's statement.

The judgment is affirmed.

In this opinion the other judges concurred.