******************************************************

The ''officially released'' date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the ''officially released'' date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* JOVAN
MARQUIS GHANT
(AC 44146)

Prescott, Clark and DiPentima, Js.

*Syllabus*

Convicted, after a jury trial, of the crimes of unlawful restraint in the first
degree, assault in the third degree and threatening in the second degree,
and, after pleas of guilty, of being a persistent offender, the defendant
appealed to this court. He claimed, inter alia, that the trial court violated
his sixth amendment right to self-representation when it denied his
request to proceed as a self-represented party. At a pretrial hearing, at
which his counsel was not present, the defendant stated to the court
that he wanted to fire his counsel. When the court began to explain
that it was not allowed to talk directly with him without his attorney
present, the defendant interjected and asserted that he wanted to defend
himself. The court then said, "I can't," twice in an attempt to finish
its sentence and thereafter reiterated, "I can't talk to you about" self-
representation. When the defendant asked for a transcript of the proceed-
ings, the court stated, "[n]o, no. You're not getting canvassed" as to
self-representation and told him to file an appearance with the clerk's
office, after which he would be canvassed at the next court proceed-
ing. *Held*:

1. The trial court did not violate the defendant's sixth amendment right to
   self-representation, as his statements to the court did not constitute a
   clear and unequivocal request to proceed as a self-represented party:
   the court neither clearly nor conclusively denied the defendant's request
   to represent himself but, rather, emphasized that it did not want to, and
   could not, speak with him without his attorney present, as the court's
   statements, "I can't," and, "I can't talk to you about this," reasonably
   could have referred to its view that it could not properly talk to the
   defendant about his request without his attorney present, and the court's
   statement, "[n]o, no. You're not getting canvassed," could not be read
   as a clear denial of the defendant's request to represent himself, as it
   was not clear from the transcript of the proceeding to what the court
   was saying no; moreover, although the court inadvisably instructed the
   defendant, who was incarcerated throughout the proceedings, to file a
   pro se appearance with the clerk's office and stated that he would be
   canvassed at the next court hearing, the court did not condition its
   willingness to consider his request on the fulfillment of that instruction,
   and its acknowledgment of his right to self-representation and suggestion
   that the required canvass would occur at a later date refuted the defen-
   dant's assertion that the court clearly and conclusively denied his
   request; furthermore, the defendant waived his right to self-representa-
   tion when he acquiesced in representation by counsel at subsequent
   hearings and at trial, and failed to reassert that right.

2. The trial court did not abuse its discretion in limiting the scope of defense
   counsel's cross-examination of the victim regarding her motivation for
   not wanting to go to jail; the court did not unduly restrict counsel's
   cross-examination, as it permitted counsel to question the victim about
   her statement to the police that she did not want to go to jail so as to
   expose her motive, interest, bias or prejudice in cooperating with the
   police, and, as the victim admitted that she did not want to go to jail,
   her motive to avoid prison was undisputed.

Argued February 2—officially released May 31, 2022

*Procedural History*

Substitute information charging the defendant with
the crimes of unlawful restraint in the first degree,
assault in the third degree, strangulation in the second
degree and threatening in the second degree, and two
part B informations charging the defendant in each with

being a persistent offender, brought to the Superior Court in the judicial district of New Haven, where the substitute information was tried to the jury before *B. Fischer, J.*; verdict of guilty of unlawful restraint in the first degree, assault in the third degree and threatening in the second degree; thereafter, the defendant was presented to the court on pleas of guilty to the part B informations; judgment in accordance with the verdict and the pleas, from which the defendant appealed to this court. *Affirmed.*

*James B. Streeto*, senior assistant public defender, with whom was *Emily M. Shouse*, former certified legal intern, for the appellant (defendant).

*Nathan J. Buchok*, deputy assistant state's attorney, with whom, on the brief, were *Patrick J. Griffin*, state's attorney, and *Jason Germain*, senior assistant state's attorney, for the appellee (state).

*Opinion*

PRESCOTT, J. The defendant, Jovan Marquis Ghant, appeals from the judgment of conviction, rendered following a jury trial, of unlawful restraint in the first degree in violation of General Statutes § 53a-95 (a), assault in the third degree in violation of General Statutes § 53a-61 (a) (1), and threatening in the second degree in violation of General Statutes § 53a-62 (a) (1). On appeal, the defendant claims that the trial court (1) violated his right to self-representation under the sixth amendment to the United States constitution and article first, § 8, of the Connecticut constitution[1] by denying his request to represent himself and (2) violated his right to confront the witnesses against him under the sixth amendment by improperly limiting cross-examination of the state's key witness. We affirm the judgment of the trial court.

On the basis of the evidence admitted at trial, the jury reasonably could have found the following facts. In early July, 2018, the victim, B,[2] met the defendant in New Haven, and, thereafter, the two entered into a relationship. B and the defendant were homeless and were living together in a car that was owned by the defendant's friend. On July 21, 2018, at about 8:30 p.m., B and the defendant were inside the car, which was parked along a sidewalk in the Wooster Street neighborhood of New Haven. B and the defendant began arguing because the defendant thought that B had been flirting with the defendant's friends earlier in the day.

Francesca Djerejian and her boyfriend, Craig Vargas, who were visiting New Haven for the weekend, witnessed the argument. Djerejian and Vargas were walking from the Omni Hotel, where they were staying, to the Wooster Street neighborhood to have pizza at a restaurant. En route to the restaurant, the couple saw the car parked along the sidewalk. As they passed the car, they heard B and the defendant arguing inside. B was sitting in the passenger seat while the defendant was sitting in the driver's seat. B then got out of the car and walked to the sidewalk. The defendant also exited the car and followed B onto the sidewalk. As B was walking away from the car, the defendant said, "don't think I won't hurt you . . . ."

The defendant then punched B, and she fell to the ground. The defendant continued to punch B as she was on the ground.[3] While the defendant was punching B, Djerejian and Vargas decided to keep walking away from the car and toward the end of the block out of concern for their own safety. Upon reaching the end of the block, Djerejian called 911. The assault was still taking place when Djerejian called 911 and when she and Vargas left the area.

While B was on the ground, she tried to fight back but could not get up off the sidewalk because the defendant

continued to punch her and, at one point, choked her. The defendant then dragged her from the sidewalk back to the car where he choked her again. While the defendant was choking B he said, "[d]o you want to die . . . ?"

New Haven Police Officers John Brangi and Vincent M. Destefanis responded to the 911 call. When the officers arrived, they placed the defendant in handcuffs, and Destefanis completed a patdown of the defendant The defendant was bleeding from a cut above his right eye.

Meanwhile, Brangi spoke with B, and she recounted the details of the assault to him. At one point during the conversation, B stated that she did not want to go to jail. B was upset, frightened, and scared as she spoke with him. Her face was extremely swollen, she was spitting out blood, had marks around her neck, and scrapes on her feet.

B was transferred to Yale New Haven Hospital for further treatment of her injuries.[4] Mary Ellen Lyon, an emergency room physician, treated B at the hospital. B's cheek and jaw were very swollen, her chest was tender, and she had cuts and scrapes on one of her legs.[5] B remained in the hospital for three days.

The defendant was transported to Yale New Haven Hospital, Saint Raphael Campus, to be evaluated. Destefanis followed the ambulance to the hospital. The defendant subsequently was released from the hospital and arrested.

Following a jury trial, the defendant was found guilty of unlawful restraint in the first degree in violation of § 53a-95 (a), assault in the third degree in violation of § 53a-61 (a) (1), and threatening in the second degree in violation of § 53a-62 (a) (1). The defendant was found not guilty of strangulation in the second degree in violation of General Statutes § 53a-64bb (a). The defendant pleaded guilty to two part B informations, each charging him with being a persistent offender under General Statutes § 53a-40d. The defendant was sentenced to a total effective term of seven years of incarceration, execution suspended after four years, followed by three years of probation. This appeal followed. Additional procedural history will be set forth as necessary.

I

The defendant first claims that the trial court violated his right to self-representation under the sixth amendment to the United States constitution.[6] The defendant specifically argues that the court improperly denied his clear and unequivocal request to represent himself. We disagree.

The following procedural history is relevant to our resolution of this claim. On January 18, 2019, a hearing was held before the court, *Markle, J.* At the time, Attor-

ney Maureen Murphy, a public defender, represented the defendant. At the commencement of the hearing, Murphy stated, "Your Honor, the state conveyed a new offer to [the defendant]. I conveyed—conveyed that to him today. I did see him speaking with [another attorney], so perhaps he is considering [retaining that attorney]. Perhaps we can have a continuance." The following colloquy then occurred:

"The Court: All right. Mr. Ghant, your—you'd like to seek private counsel?

"The Defendant: I'm not quite sure yet. I have to speak with my—my family.

"The Court: All right.

"The Defendant: But I want Mrs. Murphy dismissed as counsel, if possible.

"The Court: All—

"The Defendant: Also—

"The Court: All right. Well, you'll—can you make those discussions within two weeks?

"The Defendant: Yes.

"The Court: All right. We'll bring you back then on February 1st.

"[Attorney Murphy]: Thank you.

"The Defendant: And, also—I'm putting in a verbal—

"[Attorney Murphy]: I'm advising you not to speak anymore, Mr. Ghant.

"The Defendant: I don't want to take her counsel. I'd also like to put in a verbal motion for discovery for my case. Is that possible, Your Honor?

"The Court: So—

"[The Prosecutor]: Attorney—

"The Court: —Mr. Ghant, at this point you are represented by counsel.

"The Defendant: Yeah.

"The Court: New counsel can file in lieu of. And new counsel can request the discovery.

"The Defendant: Well, if I asked her several time[s] to file a motion, she—she refused to do so.

"[Attorney Murphy]: I—

"The Defendant: She doesn't—she doesn't really do what I ask her to do. And as far as I'm concerned, the last time I came to court, she made up an offer, which the state didn't even know about.

"[The Prosecutor]: But, Your Honor, if I could clarify that just so that—for [the defendant's] knowledge? The state did make an offer back in September of five years, suspended after two years to serve, with three years

probation. After speaking with the complainant and after speaking with Your Honor today, both the complainant and Your Honor felt that offer was too low, considering the allegation. And the state did make the new offer. Furthermore, Attorney Murphy does have all of the discovery that the state has.

"The Defendant: Why don't I have it? 'Cause I asked you for it several times?

"[The Prosecutor]: That's not a question I can answer.

"The Defendant: Okay. I—I asked her that.

"The Court: All right. Mr. Ghant, we're gonna continue it to February 1st.

"The Defendant: No problem.

"The Court: All right.

"The Defendant: One last thing—

"The Court: You'll come back on that date with a new counsel, if you wish. If you don't, at this point, until somebody files an appearance in lieu of Attorney Murphy's, she's still in on the case until that point.

"The Defendant: Would it be possibly transferred to high court? How—how would that work? How would I go about that?

"The Court: No, sir.

"The Defendant: I mean, these are severe charges. I would assume that high court—

"The Court: They are very severe charges.

"The Defendant: Yeah. I don't understand why I'm here, then.

"The Court: Mr. Ghant, I'm gonna tell you what the procedure is.

"The Defendant: Okay.

"The Court: All right.

"The Defendant: I understand.

"The Court: You have to follow the procedure.

"[Attorney Murphy]: Your—

"The Court: I'll continue the case for you to get new counsel.

"The Defendant: All right.

"The Court: That's what you wish to do. I'll give you ample opportunity to do it. You told me two weeks is sufficient time. If you'd like more, I can give you more time. But at this juncture, for—we've had a judicial pretrial. The attorney needs to discuss it. The new attorney needs to discuss the case with you and then advise you what to do.

"The Defendant: But if I feel that she's insufficiently

representing me, I wouldn't be privileged to fire counsel?

"The Court: You know, you get appointed counsel, you get appointed counsel. Otherwise, you get your own counsel, or you can represent yourself. Those are your options.

"The Defendant: I'd like to represent myself at the time being and dismiss counsel, then.

"The Court: All right. So, we'll continue the case.

"The Defendant: Mm-hmm.

"The Court: You have the right to represent yourself, if you'd like. You have to file an appearance at the clerk's office.

"The Defendant: Not a problem.

"The Court: All right.

"The Defendant: Thank you.

"The Court: So, you'll do that.

"[Attorney Murphy]: Your Honor, is the court withdrawing—

"The Court: No.

"[Attorney Murphy]: —me?

"The Court: No.

"[Attorney Murphy]: And, also, I did file a motion to modify [the defendant's] bond, as per his request for today, but considering the fact that he may be retaining private counsel, I'd ask that be marked off to the next court date.

"The Court: All right. So ordered."

At the next hearing, which took place on February 1, 2019, Murphy informed the court, *Markle, J.*, that the attorney-client relationship had broken down, was beyond repair, and, therefore, she was requesting that new counsel be appointed to represent the defendant. In response, the court stated that it would appoint a special public defender to represent the defendant and continued the case for two weeks. The defendant stated, "[a]ll right."

Subsequent pretrial hearings took place on February 15, April 5, May 10, and June 7 and 28, 2019, at which the defendant was represented by Attorney Glenn M. Conway. Conway was not present at either the May 10 or June 28, 2019 hearings due to other court matters and therefore made requests for a continuance on both dates. At both hearings, the defendant expressed frustration with the continuances and with Conway's representation but never expressed or reasserted any interest in self-representation.[7]

Another hearing was scheduled for July 5, 2019,

before the court, *Markle, J.* Conway, however, was held up again by another matter and, therefore, was not present at the hearing but did request a continuance. The following colloquy ensued:

"The Court: All right. Mr. Ghant, your attorney—a judge called from Waterbury. Your attorney—

"The Defendant: Yeah. I already know.

"The Court: You already know.

"The Defendant: Is there anything I can ask? Because he's supposed to get back—he's not—I want him fired. I—I've been going through this with him for almost six months. I was told that he was supposed to give my counteroffer to the prosecutor. He hasn't told me anything. He doesn't return my phone calls.

"The Court: All right. I don't want to get in the middle of your communications with your attorney.

"The Defendant: I've been down a year, Your Honor. If this isn't a case, then I want to go to trial. I—I—I don't even know—

"The Court: Well, you can hire an attorney. You can hire whatever—you can—

"The Defendant: I don't even know—I don't even know if they got my counteroffer. If they—

"The Court: Sir, the rules provide, I can't talk to you directly about your case without the attorney of record—

"The Defendant: But how do I get in—I would like to [defend] myself.

"The Court: I can't.

"The Defendant: How do I get in contact with the prosecutor to—

"The Court: I can't.

"The Defendant: —at least let them know my counteroffer?

"The Court: You can—

"The Defendant: I've been on a year. This is bullshit.

"The Court: The matter is continued, August—what was the date we gave for Mr. Conway?

"The Defendant: August? Are you fucking kidding me? I don't give a fuck, bro. I've been down a goddamn year. This is bullshit.

"The Court: All right. Sir, if you keep doing it, I'm gonna have to hold you in contempt and give you even more.

"The Defendant: I got a year in. What is that, six months? That's nothing.

"The Court: I'm gonna have to do it. You're forcing

me to do it.

"The Defendant: Your Honor, you—

"The Court: I don't want to.

"The Defendant: Nobody will talk to me about anything.

"The Court: I can't talk to you about this.

"The Defendant: Okay. So, who do I talk to? You're not giving me any options.

"The Court: Your attorney or hire an attorney. You have the right to hire whoever you want.

"The Defendant: I've already fired my attorney and got Conway, and Conway's not doing his job. So, I'd like to fire him and represent myself. I do have the right to do that, don't I?

"The Court: All right. The matter is set down—what was the date we gave for Mr. Conway?

"The Defendant: Can I get a copy of the transcript where I'm being denied my—my legal rights? This is my—my amendment rights to represent myself. Right?

"[The Prosecutor]: We gave you attorney—

"The Court: No, no. You're not getting canvassed on that today.

"[The Prosecutor]: August 16th is the other date.

"The Court: Because the problem is, we have—nothing's gonna happen today, anyway.

"The Defendant: Nothing's ever happened. Your Honor, I've been down a year. They told me, right, that they have no victim. Why am I still sitting in jail when I can't go to trial? No one's telling what they want to do with my counteroffer.

"The Court: So, you do—you do have a right, but you've got to do it the way that it's got to be done.

"The Defendant: I've been doing it for a year, Your Honor. I've already fired the public defender who would not do anything I asked her to do.

"The Court: So, file a pro se appearance, and you'll be canvassed on it on self-representation on the next case.

"The Defendant: How—how do I do that? Is there a paperwork or something like that I can get?

"The Court: Yeah. At the clerk's office you can get it. All right. So ordered.

"The Defendant: If I hire a what? Could you write that down for me please?

"The Court: No. I can't give you legal advice. I—

"The Defendant: You just told me—

"The Court: You're just gonna have to figure this out.

"The Defendant: So, when is my continuance?

"The Court: What date?

"The Defendant: August? You're fucking kidding me. Right?

"The Court: The sixteenth. Sixteenth."

The defendant subsequently appeared before the court on August 19, and September 6 and 10, 2019, before jury selection began on September 23, 2019. The defendant was represented by Conway at these subsequent pretrial hearings. The defendant did not raise his right to self-representation at any of the hearings and proceeded to trial represented by Conway.

The following legal principles guide our analysis of the defendant's claim that the court violated his right to self-representation. "The sixth amendment to the United States constitution provides in relevant part: In all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense. The sixth amendment right to counsel is made applicable to state prosecutions through the due process clause of the fourteenth amendment. . . . In *Faretta* v. *California*, 422 U.S. 806, 807, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975), the United States Supreme Court concluded that the sixth amendment [also] embodies a right to self-representation and that a defendant in a state criminal trial has a constitutional right to proceed without counsel when he voluntarily and intelligently elects to do so. . . . In short, forcing a lawyer upon an unwilling defendant is contrary to his basic right to defend himself if he truly wants to do so. . . .

"It is well established that [t]he right to counsel and the right to self-representation present mutually exclusive alternatives. A criminal defendant has a constitutionally protected interest in each, but since the two rights cannot be exercised simultaneously, a defendant must choose between them. When the right to have competent counsel ceases as the result of a sufficient waiver, the right of self-representation begins. . . . Put another way, a defendant properly exercises his right to self-representation by knowingly and intelligently waiving his right to representation by counsel. . . .

"State and federal courts consistently have discussed the right to self-representation in terms of invoking or asserting it . . . and have concluded that there can be no infringement of the right to self-representation in the absence of a defendant's proper assertion of that right. . . . The threshold requirement that the defendant clearly and unequivocally invoke his right to proceed [as a self-represented party] is one of many safeguards of the fundamental right to counsel. . . . Accordingly, [t]he constitutional right of self-representation depends . . . upon its invocation by the defendant in a clear and unequivocal manner. . . . In the

absence of a clear and unequivocal assertion of the right to self-representation, a trial court has no independent obligation to inquire into the defendant's interest in representing himself . . . . Conversely, once there has been an unequivocal request for self-representation, a court must undertake an inquiry [pursuant to Practice Book § 44-3],[8] on the record, to inform the defendant of the risks of self-representation and to permit him to make a knowing and intelligent waiver of his right to counsel." (Footnote added; internal quotation marks omitted.) *State* v. *Paschal*, 207 Conn. App. 328, 332–34, 262 A.3d 893, cert. denied, 340 Conn. 902, 263 A.3d 387 (2021), cert. denied,      U.S.     , 142 S. Ct. 1395,      L. Ed. 2d      (2022). "The inquiry mandated by Practice Book § 44-3 is designed to ensure the knowing and intelligent waiver of counsel that constitutionally is required." (Internal quotation marks omitted.) Id., 333.

"Although a clear and unequivocal request is required, there is no standard form it must take. [A] defendant does not need to recite some talismanic formula hoping to open the eyes and ears of the court to [that] request. Insofar as the desire to proceed [as a self-represented party] is concerned, [a defendant] must do no more than state his request, either orally or in writing, unambiguously to the court so that no reasonable person can say that the request was not made. . . . Moreover, it is generally incumbent upon the courts to elicit that elevated degree of clarity through a detailed inquiry. That is, the triggering statement in a defendant's attempt to waive his right to counsel need not be punctilious; rather, the dialogue between the court and the defendant must result in a clear and unequivocal statement. . . .

"[I]n conducting our review, we are cognizant that the context of [a] reference to self-representation is important in determining whether the reference itself was a clear invocation of the right to self-representation. . . . The inquiry is fact intensive and should be based on the totality of the circumstances surrounding the request . . . which may include, inter alia, whether the request was for hybrid representation . . . or merely for the appointment of standby or advisory counsel . . . the trial court's response to a request . . . whether a defendant has consistently vacillated in his request . . . and whether a request is the result of an emotional outburst . . . .

"When a defendant's assertion of the right to self-representation is not clear and unequivocal, recognition of the right becomes a matter entrusted to the exercise of discretion by the trial court. . . . In the exercise of that discretion, the trial court must weigh into the balance its obligation to indulge in every reasonable presumption against waiver of the right to counsel." (Citation omitted; emphasis omitted; internal quotation marks omitted.) Id., 334–35.

Although a court is required to conduct a canvass pursuant to Practice Book § 44-3, once a defendant has clearly and unequivocally invoked his right to self-representation; see *State* v. *Paschal*, supra, 207 Conn. App. 334; our Supreme Court explained in *State* v. *Braswell*, 318 Conn. 815, 842 n.8, 123 A.3d 835 (2015), that there may be some circumstances in which a defendant asserts his right to self-representation but subsequently waives that right before a court clearly and conclusively denies his request. The court in *Braswell* explained: "[If] a trial court has not clearly and conclusively denied a defendant's request to represent himself, the defendant may subsequently waive such a request. But, [if] a court has clearly and conclusively denied the request, the defendant does not waive his right to self-representation by subsequently acquiescing in being represented by counsel or by failing to reassert that right." Id., 843–44.

The court in *Braswell* made clear that "[t]his does not mean, however, that, after a defendant's clear and unequivocal request to represent himself, a trial court may simply ignore such a request and proceed to a critical stage of the proceedings, and thereby avoid any error simply because it did not make a clear and conclusive ruling on the defendant's request. . . . [O]nce a defendant has clearly and unequivocally invoked his right to self-representation, the trial court is obligated to conduct a canvass in accordance with Practice Book § 44-3 to determine if his waiver of counsel is knowingly and intelligently made. Our decision in this case does not alter that obligation. Instead, it suggests there may be some instances in which a defendant asserts and subsequently waives his right to self-representation before a court clearly and conclusively rules on the defendant's request. In such instances, it is possible that there are circumstances in which the trial court's delay in ruling on the request would not constitute error." Id., 842 n.8.

Our Supreme Court explained its reasoning behind this rule: "Although a defendant does not have to reassert his right to self-representation once it has been clearly denied by the court . . . we have never held that there is no obligation to renew such claim [if] the court does not address it. It seems to us that there is a significant difference between a defendant who waives or forfeits his right to self-representation after a clear ruling and one who waives or forfeits the right when there has been no such ruling. In the former situation, it is likely that the waiver or forfeiture is precipitated by the denial. . . . In the latter situation, contrarily, there has been no court action that would suggest that the reassertion of one's right would be futile." (Citations omitted.) Id., 841 n.8.

Having set forth the applicable legal principles, we next set forth the standard of review that governs our analysis of the defendant's claim. "We ordinarily review

for abuse of discretion a trial court's determination, made after a canvass pursuant to [Practice Book] § 44-3, that a defendant has knowingly and voluntarily waived his right to counsel. . . . In cases . . . however, where the defendant claims that the trial court improperly failed to exercise that discretion by canvassing him after he clearly and unequivocally invoked his right to represent himself . . . whether the defendant's request was clear and unequivocal presents a mixed question of law and fact, over which . . . our review is plenary." (Internal quotation marks omitted.) *State* v. *Paschal*, supra, 207 Conn. App. 333.

On appeal, the defendant claims that he clearly and unequivocally invoked his right to proceed as a self-represented party at the July 5, 2019 hearing,[9] and that, despite this clear and unequivocal invocation, the court clearly and conclusively denied him this right, thereby violating his sixth amendment right to self-representation. The state argues that the defendant did not make a clear and unequivocal request to represent himself, and, in the alternative, even if he did make a clear and unequivocal request to represent himself, the court did not clearly and conclusively deny his request, and the defendant subsequently waived his right to self-representation. Even if we assume, without deciding, that the defendant's statements during his dialogue with the court on July 5, 2019, constituted a clear and unequivocal request to represent himself, we conclude that the court did not clearly and conclusively deny that request and that the defendant subsequently waived his right to self-representation.

At the commencement of the July 5, 2019 hearing, the court informed the defendant that Conway was not present. The defendant then stated that he wanted Conway fired. The court immediately stated that it did not want to get in the middle of the defendant's communications with his attorney. The court began explaining to the defendant that "the rules provide, [that the court] can't talk to you directly about your case without the attorney of record," but before the court had finished its sentence, the defendant interjected, asserting that he would like to defend himself. The court then said, "I can't."

The defendant contends that the court clearly and conclusively denied his request to represent himself when the court stated, "I can't." We disagree. We conclude that the trial court's statement, "I can't," when read in context, was not a clear and conclusive denial of the defendant's request. The court repeated, "I can't," twice in an apparent attempt to finish its previous statement, explaining how it could not talk to the defendant about the case without the attorney of record present. The defendant's interjection muddled the record. Presumably, the court was about to advise the defendant regarding how he could represent himself when it stated,

"[y]ou can," before it was again cut off by the defendant, who began cursing. The court informed the defendant that the matter would be continued.

The defendant then became even more emotional, utilizing numerous expletives to express his frustration with the ordered continuance. After warning the defendant that it would hold him in contempt if he continued his behavior, the court reiterated, "I can't talk to you about this." Read in context, this statement by the court is also not a clear and conclusive denial of the defendant's request because it reasonably could refer to the court's view that it could not properly talk to the defendant about his request without his attorney present.

Shortly thereafter, the defendant stated that he would like to fire Conway and represent himself. The court responded, "[a]ll right. The matter is set down—what was the date we gave Mr. Conway?" The defendant then asked, "[c]an I get a copy of the transcript where I'm being denied my—my legal rights? This is my—my amendment rights to represent myself. Right?" The prosecutor began to say, "[w]e gave you attorney," when the court said, "[n]o, no. You're not getting canvassed on that today." The court went on to explain that nothing was going to happen during the hearing and informed the defendant that he did have a right to represent himself but that he had to "do it the way that it's got to be done." The court told the defendant to file a pro se appearance and that he would be canvassed on self-representation "on the next case." When the defendant asked how to file an appearance, the court said it could not give him legal advice and that he was "just gonna have to figure [it] out." The court then continued the matter until August 16, 2019.

The defendant contends that the court clearly and conclusively denied his request to represent himself when it stated, "[n]o, no." The court's statement, "[n]o, no," also cannot properly be read, in context, as a clear denial of the defendant's request to represent himself. Because the prosecutor began talking, and because the defendant's request to defend himself was intermixed with a request for a copy of the transcript of the hearing, it is not clear from the transcript to what the court was saying no. Thus, the court's statement, "[n]o, no," cannot properly be read as a clear denial of the defendant's request.

The defendant also argues that it was improper for the court to tell him to file a pro se appearance. According to the defendant, by telling him that he would have to figure out how to represent himself on his own, the court clearly and conclusively denied his request to represent himself because it indicated to him that further inquiries and invocations of his right to self-representation would be futile. Although we question the propriety of the court's statement that he should file a pro se appearance,[10] we do not agree with the defendant

that this statement amounted to a clear and conclusive denial of his right to self-representation. As previously explained, despite the court's improper instruction, the court told the defendant that he did have a right to self-representation and that he would be canvassed on that right during the next hearing. Thus, the court did not clearly and conclusively deny the defendant's request.

The defendant next contends that our Supreme Court's decisions in *State* v. *Braswell*, supra, 318 Conn. 815, and *State* v. *Jordan*, 305 Conn. 1, 44 A.3d 794 (2012), control this case. We disagree.

In *State* v. *Braswell*, supra, 318 Conn. 845–47, our Supreme Court determined that the trial court's denial of the defendant's request to represent himself was both clear and conclusive when the court said, "I'm going to deny the motion to discharge counsel or allow you to proceed pro se. If, in the next four weeks, I see some additional support for those, I'm happy to reconsider them, okay?" (Emphasis omitted; internal quotation marks omitted.) Id., 845. In *Braswell*, the trial court's denial was clear: "I'm going to deny the motion to . . . allow you to proceed pro se." (Emphasis omitted; internal quotation marks omitted.) Id. Here, unlike in *Braswell*, none of the court's statements amounted to a clear denial of the defendant's request. As previously explained, read in the context of the entire transcript, we cannot conclude that the court's statements, "I can't," and, "no," clearly denied the defendant's request to represent himself.

The court in *Braswell* also concluded that the trial court's denial of the defendant's request was conclusive because "[t]he court conditioned its willingness to reconsider its ruling on seeing some additional support for the motion"; (internal quotation marks omitted) *State* v. *Braswell*, supra, 318 Conn. 845; and because "the additional support the court wanted was largely outside the control of the defendant." Id., 846. Therefore, the court concluded that the "defendant, faced with these circumstances, could reasonably believe that it would be futile to again request to proceed pro se." Id. Here, unlike in *Braswell*, although the court inadvisably instructed the defendant to file a pro se appearance; see footnote 10 of this opinion; the court did not condition its willingness to consider, at a later date, the defendant's request to proceed as a self-represented party on the fulfillment of that instruction. We thus find the defendant's reliance on *Braswell* unavailing.

In *State* v. *Jordan*, supra, 305 Conn. 16, our Supreme Court concluded that the trial court had denied the defendant's request to invoke his right to self-representation because, in response to the defendant's oral assertion of the right, the trial court cut the defendant off, directed him to stop talking, ordered him to leave the courtroom to discuss the matter with counsel and, at the conclusion of the hearing, summarily denied the

defendant's motion to dismiss counsel without acknowledging the defendant's written and oral assertions of the right to represent himself. Here, unlike in *Jordan*, the court acknowledged the defendant's request to represent himself and did not make a ruling on it. Instead, the court continued the matter and suggested that the defendant would be canvassed on his request at a future hearing because the court expressed concern about talking to the defendant about his request without his attorney present. We thus disagree with the defendant's assertion that this case is similar to *Jordan*, in which the court's statements suggested that the defendant's reassertion, at future proceedings, of his right to self-representation would be futile; id., 20 ("the denial likely convinced [the] defendant [that] the self-representation option was simply unavailable, and [that] making the request again would be futile" (internal quotation marks omitted)); and conclude that the defendant's reliance on *Jordan* is misplaced.[11]

Unlike in *Braswell* and *Jordan*, the court in the present case neither *clearly* nor *conclusively* denied the defendant's request to represent himself. Rather, the court emphasized that it did not want to speak with the defendant without his attorney present and noted that rules provide that it could not talk to the defendant about his case without the attorney present. The court's acknowledgment of the defendant's right to self-representation and its statement suggesting that the required canvass would occur at a later date refute the defendant's assertion that the court clearly and conclusively denied his request. To the contrary, the question of self-representation was left open for possible further discussion at subsequent pretrial hearings. See *Wilson* v. *Walker*, 204 F.3d 33, 38 (2d Cir.), (concluding that defendant's motion to represent himself was "still open for discussion" where court based its denial, in part, on defendant's refusal to answer certain questions that would have allowed court to determine whether waiver of counsel was knowing and intelligent and where court gave defendant one week to confer with counsel regarding his motion to represent himself), cert. denied, 531 U.S. 892, 121 S. Ct. 218, 148 L. Ed. 2d 155 (2000); see also *State* v. *Paschal*, supra, 207 Conn. App. 338 (right to self-representation still open for discussion when court denied defendant's request to represent himself without prejudice and granted one week continuance).

The court in *Braswell* provided that "there may be some instances in which a defendant asserts and subsequently waives his right to self-representation before a court clearly and conclusively rules on the defendant's request. In such instances, it is possible that there are circumstances in which the trial court's delay in ruling on the request would not constitute error." *State* v. *Braswell*, supra, 318 Conn. 842 n.8. We conclude that the facts of this case present such a circumstance. The transcript makes clear that the court's delay in ruling

on the defendant's request to represent himself was due to its concern about violating the Code of Judicial Conduct—specifically, rule 2.9 (a), which provides that "[a] judge shall not initiate, permit, or consider ex parte communications, or consider other communications made to the judge outside the presence of the parties or their lawyers, concerning a pending or impending matter," subject to certain exceptions. As a result of this concern, the court communicated to the defendant that, although he had a right to self-representation, he would not be canvassed on that right during the July 5, 2019 hearing but, instead, at a future hearing when defense counsel was present. Based upon our thorough review of the July 5, 2019 transcript, we conclude that the court did not clearly and conclusively deny the defendant's request to represent himself.

We further conclude that the defendant waived his right to represent himself by "subsequently acquiescing in being represented by counsel [and] by failing to reassert [his] right." *State* v. *Braswell*, supra, 318 Conn. 844. As previously discussed, after the July 5, 2019 hearing, the defendant appeared before the court on August 19 and September 6 and 10, 2019, before jury selection began on September 23, 2019. The defendant was represented by Conway throughout these subsequent pretrial hearings and did not raise his right to self-representation at any of the hearings. The defendant then proceeded to trial represented by Conway. Because the defendant acquiesced to being represented by counsel and did not reassert his right to self-representation after the July 5, 2019 hearing, he waived that right. Accordingly, we conclude that the court did not violate the defendant's sixth amendment right to self-representation.

II

The defendant also claims that the court improperly limited his cross-examination of B and thereby violated his sixth amendment right to confront the witnesses against him.[12] The defendant claims that the court foreclosed cross-examination into an entire area of inquiry, namely, B's bias and motive for exaggerating the extent of her injuries and the details of the affray, when it prevented him from cross-examining her regarding her motivations for not wanting to go to jail. We disagree.

The following facts and additional procedural history are relevant to our resolution of this claim. As previously noted, Brangi spoke with B at the scene of the crime after responding to the 911 call. During this conversation, B told the officer what had happened. B also told the officer that she did not want to go to jail.

At trial, during cross-examination, the following colloquy occurred between defense counsel and B:

"Q. When you were first speaking to the police officer at the scene, the one who interviewed you, I think it

was Officer Brangi, do you remember saying to him that you had hit [the defendant]?

"A. Yes.

"Q. Do you remember saying to him that you didn't want to go to jail?

"A. Yes.

"Q. Now, at that point you were on methadone?

"A. I was on methadone, yep.

"Q. Okay. And was your concern that, if you were in jail, that you had to go through withdrawal?

"A. No, because they do methadone in jail.

"Q. How do you know that?"

The prosecutor objected. The court then heard argument on the objection outside the presence of the jury. Defense counsel argued that the question went "to the overall credibility assessment. . . . I basically, implicitly said, you're lying because you didn't want to go through withdrawal. . . . And so it goes to—again, it's—it's her state of mind, and somehow, I want to get to her state of mind as to why she's saying she doesn't want to go to jail. Why would she think she had to go to jail if she didn't do anything?"

The prosecutor argued that the question was not relevant: "That's just clearly—that's not relevant to the situation. She indicated she was taking methadone, and now [defense counsel's] asking her to try to [impugn] her credibility by saying that she might have some credibility issues because she's in jail. I just don't see how this is relevant, how her knowledge of methadone in prison would be going to her ability to tell the truth, what happens, and I—I don't believe it's relevant."

Defense counsel then conducted an offer through his questioning of B:

"Q. So, what I had just asked you was, you responded to the question and indicat—you indicated that you can get methadone and [the Department of Correction (department)] administers methadone, and I asked you, how do you know. And so for this proceeding only and not in front of the jury, how do you know?

"A. From friends. I've had friends who have gone to jail on methadone.

"Q. Okay. So, you do not have personal knowledge of that?

"A. No.

* * *

"Q. So, assuming that the objection is sustained with regard to that question, my question would be, you don't have firsthand knowledge that the [the department] administers methadone?

"A. No."

The prosecutor maintained that the line of questioning was irrelevant. The court agreed, stating: "I agree with the state on this, Attorney Conway. I don't think it's relevant to what this jury has to decide, whether—the witness' status on whether there is administration of methadone at [the department], and there's no issue, as I understand it, that she was presented to [the department] for the events of that evening. So, I do make a ruling that it's not relevant to what this jury has to decide."

The jury was brought back into the courtroom, and the cross-examination of B continued:

"[Defense Counsel]: Going back to—so, again, you would agree that you had asked the officer or told the officer at the scene that you did not want to go to jail; right?

"[B]: Yes.

"[Defense Counsel]: And had you gone to jail and there had been a bond, you would not have been able to make it; right?

"[B]: Yes.

"[The Prosecutor]: What was that, Judge?

"[Defense Counsel]: If you had—do you want me to repeat?

"The Court: Sure. Why don't you repeat it.

"[Defense Counsel]: If you had—if you had gone— what I said was, if you had gone to jail, been arrested, and there had been a bond you would not have been able to make it?

"[The Prosecutor]: I don't see how that's relevant, and I would ask that it be stricken, Judge.

"The Court: Yeah. No. I'm going to sustain the objection, it's not relevant to what this jury has to decide.

"[The Prosecutor]: May it be stricken, Judge?

"The Court: Yeah. And I'll strike it.

"[The Prosecutor]: Thank you."

We begin by setting forth our standard of review and the applicable principles of law that govern our analysis of the plaintiff's claim. "Our standard of review of a claim that the court improperly limited the cross-examination of a witness is one of abuse of discretion. . . . [I]n . . . matters pertaining to control over cross-examination, a considerable latitude of discretion is allowed. . . . The determination of whether a matter is relevant or collateral, and the scope and extent of cross-examination of a witness, generally rests within the sound discretion of the trial court. . . . Every reasonable presumption should be made in favor of the

correctness of the court's ruling in determining whether there has been an abuse of discretion. . . .

"The court's discretion, however, comes into play only after the defendant has been permitted cross-examination sufficient to satisfy the sixth amendment [to the United States constitution]. . . . The sixth amendment . . . guarantees the right of an accused in a criminal prosecution to confront the witnesses against him. . . . The primary interest secured by confrontation is the right to cross-examination . . . . As an appropriate and potentially vital function of cross-examination, exposure of a witness' motive, interest, bias or prejudice may not be unduly restricted. . . . Compliance with the constitutionally guaranteed right to cross-examination requires that the defendant be allowed to present the jury with facts from which it could appropriately draw inferences relating to the witness' reliability. . . . [P]reclusion of sufficient inquiry into a particular matter tending to show motive, bias and interest may result in a violation of the constitutional requirements of the sixth amendment. . . . In determining whether such a violation occurred, [w]e consider the nature of the excluded inquiry, whether the field of inquiry was adequately covered by other questions that were allowed, and the overall quality of the cross-examination viewed in relation to the issues actually litigated at trial." (Internal quotation marks omitted.) *State* v. *Holbrook*, 97 Conn. App. 490, 497–98, 906 A.2d 4, cert. denied, 280 Conn. 935, 909 A.2d 962 (2006).

The defendant argues that the purpose of cross-examining B as to (1) how she knew that methadone was available in jail, and (2) her ability to pay a bond had she been arrested, was to show that she was fearful of going to jail. According to the defendant, the precluded questions were relevant to show B's bias, lack of credibility, and motive to fabricate or exaggerate her injuries and the details of the assault.

Examining the nature of the inquiry, we conclude that the court did not abuse its discretion in limiting the defendant's cross-examination of B. The court permitted the defendant to question B regarding her statement to Brangi that she did not want to go to jail. In doing so, the court permitted the defendant to expose B's motive, interest, bias, or prejudice in cooperating with the police. Said another way, the court allowed the defendant to question B about her motive to avoid going to jail. The only question precluded by the court was whether B (1) had personal knowledge that methadone was available in jail, and (2) believed that she did not have the financial means to pay bail if arrested. Because B admitted that she did not want to go to jail, and, thus, her motive to avoid prison was undisputed, the court did not unduly restrict the defendant's attempt to expose B's motive, interest, bias, or prejudice. See

id., 498 ("[a]s an appropriate and potentially vital function of cross-examination, exposure of a witness' motive, interest, bias or prejudice may not be unduly restricted" (internal quotation marks omitted)). We therefore conclude that the court did not abuse its discretion in restricting the scope of defense counsel's cross-examination of B.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Although the defendant refers in his brief to the right to self-representation afforded under article first, § 8, of the Connecticut constitution, he has not provided an independent analysis of his state constitutional claim in accordance with *State* v. *Geisler*, 222 Conn. 672, 684–86, 610 A.2d 1225 (1992). Therefore, we limit our review of the defendant's claim to his right to self-representation under the federal constitution. See, e.g., *State* v. *Flanagan*, 293 Conn. 406, 409 n.3, 978 A.2d 64 (2009).

[2] In accordance with federal law; see 18 U.S.C. § 2265 (d) (3) (2018), as amended by the Violence Against Women Act Reauthorization Act of 2022, Pub. L. No. 117-103, § 106, 136 Stat. 49; we decline to identify any person protected or sought to be protected under a protection order, protective order, or a restraining order that was issued or applied for, or others through whom that person's identity may be ascertained.

[3] Djerejian testified at trial that B "was on the ground in an instant, kind of curled up, and [the defendant] was punching her" and was "punching her and, like, pounding her into the sidewalk." Djerejian explained, "the blows were kind of putting her body into the pavement" because B was on the ground. Djerejian described the defendant's actions as "very violent . . . ."

Vargas testified at trial that the defendant was "punching very aggressively, like pulling his hand back as far as he could and swinging as hard as he could."

[4] Brangi rode in the ambulance with B to the hospital. Once at the hospital, B gave another statement to Brangi.

[5] Lyon testified at trial that these injuries appeared fresh and could be consistent with someone who had recently been punched, choked, and dragged across pavement or a sidewalk.

[6] The sixth amendment to the United States constitution provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the [s]tate and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense."

[7] At the May 10, 2019 hearing, after the defendant was informed by the court, *Markle, J.*, that the case would be continued, the defendant stated: "Am I able to speak or, like—'cause they—I had this dude Conway for, like, three months. He ain't did shit. I mean, like, everything that they said was supposed to happen, he's too busy. Why are you giving me attorneys that can't even show to court? I don't understand that."

The court replied, stating: "That's the way it works. If he's on trial on a criminal matter, he can't be in two courts on the same day." The defendant then said: "But didn't you guys know a month ago when you gave me this court that he was gonna be in—" The court then continued the matter until May 24, 2019.

At the June 28, 2019 hearing, the court, *Cradle, J.*, informed the defendant that Conway was busy with another matter and had requested that the defendant's case be continued until July 5, 2019. The following colloquy then occurred between the defendant and the court:

"The Defendant: So, do I—like, you're just telling me that. I don't got a choice here in the matter? I don't—I don't—

"The Court: Say that again?

"The Defendant: I said, is—is that a choice here or—

"The Court: No. He's on trial.

"The Defendant: He's been on trial since I had him. He has—he's on trial with everybody. I didn't see him for three months—

"The Court: Let me see.

"The Defendant: —then he came back, now he's on trial with this other guy. Like, this is crazy.

"The Court: All right. Hold on a minute. Let me just see.

"The Defendant: We're supposed to be making a resolution to all of this, and he was supposed to be discussing something with the prosecutor. I guess seeing what my rebuttal to their offer. And he never said anything about that.

"The Court: Okay. I have—

"The Defendant: I want him to file motions in which he ain't filed, and that's the reason I filed the last—fired the last attorney."

The court continued the matter until July 5, 2019, but told the defendant that, "[i]f I can get [Conway] here earlier, that's what I'll do."

[8] Practice Book § 44-3 provides: "A defendant shall be permitted to waive the right to counsel and shall be permitted to represent himself or herself at any stage of the proceedings, either prior to or following the appointment of counsel. A waiver will be accepted only after the judicial authority makes a thorough inquiry and is satisfied that the defendant:

"(1) Has been clearly advised of the right to the assistance of counsel, including the right to the assignment of counsel when so entitled;

"(2) Possesses the intelligence and capacity to appreciate the consequences of the decision to represent oneself;

"(3) Comprehends the nature of the charges and proceedings, the range of permissible punishments, and any additional facts essential to a broad understanding of the case; and

"(4) Has been made aware of the dangers and disadvantages of self-representation."

[9] Although the defendant also argued, in his principal appellate brief, that he had clearly and unequivocally invoked his right to self-representation during the January 18, 2019 hearing, during oral argument before this court, the defendant's counsel conceded that he was no longer asserting this claim.

[10] We share the defendant's concern regarding the propriety of the court's instruction to him that he should file a pro se appearance with the clerk's office. The defendant was incarcerated throughout these proceedings, and his lawyer was not present at the July 5, 2019 hearing, making it unrealistic for the court to expect him to file a pro se appearance with the clerk's office. Furthermore, the defendant should not have been required to file a pro se appearance with the clerk's office until after the court canvassed him on his right to self-representation, concluded that his waiver of his right to counsel was knowing and intelligent, and ordered defense counsel to withdraw from the case.

[11] We likewise disagree with the defendant's assertion that the court here, as in *State* v. *Flanagan*, 293 Conn. 406, 978 A.2d 64 (2009), repeatedly denied him his right to self-representation and thereby convinced him that self-representation was not an option. See id., 425 (court found to have clearly denied defendant's request to represent himself by confirming on record during next day of trial that it had denied defendant's earlier request to represent himself). As previously explained, the court in the present case did not clearly deny the defendant's request to represent himself but, instead, informed him only that he would not be canvassed on the matter without his attorney present.

[12] The defendant also claims that the court violated his right to present a defense and his right to a fair trial. Because we conclude that these claims are not adequately briefed, we decline to review them. See, e.g., *State* v. *Cusson*, 210 Conn. App. 130, 137 n.8, 269 A.3d 828 (2022) ("It is well established that the appellate courts of this state are not obligated to consider issues that are not adequately briefed. . . . Whe[n] an issue is merely mentioned, but not briefed beyond a bare assertion of the claim, it is deemed to have been waived." (Internal quotation marks omitted.)).