******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

## STATE OF CONNECTICUT *v.* RICHARD BENSON
## (AC 47503)

Seeley, Wilson and Lavine, Js.

*Syllabus*

The defendant appealed from the trial court's judgment rendered in accordance with his pleas of guilty to, inter alia, the crimes of possession of narcotics with intent to sell, criminal possession of a pistol or revolver, and failure to appear in the first degree. He claimed, inter alia, that the court violated his right to self-representation under the sixth amendment to the United States constitution by failing to canvass him pursuant to the rule of practice (§ 44-3) after he clearly and unequivocally asserted that he wanted to represent himself. *Held*:

The defendant's unpreserved claim that the trial court violated his constitutional right to self-representation by failing to canvass him pursuant to Practice Book § 44-3 failed under the third prong of *State* v. *Golding* (213 Conn. 233), as the defendant's isolated statement, when viewed in context and considering the totality of the circumstances surrounding the request, was not a clear and unequivocal invocation of his right to self-representation, obligating the court to conduct a canvass.

Argued June 5—officially released October 7, 2025

*Procedural History*

Informations, in the first and second cases, charging the defendant with violation of probation, and information in the third case, charging the defendant with the crime of possession of a controlled substance, and information in the fourth case, charging the defendant with two counts each of the crimes of carrying a pistol without a permit, illegal possession of a weapon in a motor vehicle, and criminal possession of a firearm, and one count each of the crimes of possession of a controlled substance and possession of a controlled substance with intent to sell, brought to the Superior Court in the judicial district of New Haven, geographical area number twenty-three, where the court, *Zagaja, J.*, denied defense counsel's motion to withdraw; thereafter, the state filed a substitute information in the fourth case charging the defendant with the crimes

of possession of narcotics with intent to sell, criminal possession of a pistol or revolver, and failure to appear in the first degree; subsequently, the defendant was presented to the court, *Iannotti, J.*, on pleas of guilty to the charges of possession of narcotics with intent to sell, criminal possession of a pistol or revolver, and failure to appear in the first degree and admissions of violations of probation; judgments of guilty in accordance with the pleas and admissions; thereafter, the state entered a nolle prosequi as to the remaining charges; subsequently, the court, *Iannotti, J.*, denied the defendant's motion to withdraw his guilty pleas and admissions, and the defendant appealed to this court. *Affirmed.*

*Robert L. O'Brien*, assigned counsel, with whom, on the brief, was *Christopher Y. Duby*, assigned counsel, for the appellant (defendant).

*Rajan M. Doering*, certified legal intern, with whom were *Ronald G. Weller*, senior assistant state's attorney, and, on the brief, *John P. Doyle*, state's attorney, and *Sarah Jones*, assistant state's attorney, for the appellee (state).

*Opinion*

SEELEY, J. The defendant, Richard Benson, appeals from the judgment of conviction, rendered following his entry of guilty pleas pursuant to the *Alford* doctrine,[1] of possession of narcotics with intent to sell in violation of General Statutes § 21a-277 (a) (1) (A), criminal possession of a pistol or revolver in violation of General Statutes § 53a-217c, and failure to appear in the first degree in violation of General Statutes § 53a-172. On appeal, the defendant claims, inter alia, that the court violated his right to self-representation under the sixth

[1] See *North Carolina* v. *Alford*, 400 U.S. 25, 37, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

amendment to the United States constitution by failing to canvass him after he clearly and unequivocally asserted that he wanted to represent himself.[2] We disagree and, accordingly, affirm the judgment of the trial court.

The record reveals the following relevant procedural history. On May 20, 2021, the defendant was arraigned on various charges in four separate criminal docket numbers in the judicial district of New Haven, geographical area number twenty-three. Two of the matters, Docket Nos. CR-13-0139740-S and CR-14-0144876-S, involved charges of violation of probation in violation of General Statutes § 53a-32, the third matter, Docket No. CR-21-0235322-S, involved a charge of possession of a controlled substance in violation of General Statutes § 21a-279 (a) (1) (A), and the fourth matter, Docket No. CR-21-0235327-S, involved charges of possession of a controlled substance in violation of § 21a-279 (a) (1) (A), possession of narcotics with intent to sell in violation of General Statutes § 21-278 (b) (1) (A), and two counts each of the charges of carrying a pistol without a permit in violation of General Statutes § 29-35, illegal possession of a weapon in a motor vehicle in violation of General Statutes § 29-38, and criminal possession of a firearm in violation of General Statutes § 53a-217.

The defendant hired Attorney Stephen Lebedevitch to represent him in connection with all four criminal matters. Lebedevitch first appeared in court on the defendant's behalf at a pretrial hearing on July 7, 2021. At subsequent pretrial hearings, the defendant expressed dissatisfaction with Lebedevitch's representation of him. At a hearing on August 3, 2022, the defendant told the court that he wanted a different attorney

---

[2] The defendant also claims that, because he made a clear and unequivocal request to represent himself, the court was required to canvass him and its failure to do so constituted structural error requiring reversal of the judgment. In light of our determination that the defendant did not make a clear and unequivocal request to represent himself, we do not address this claim.

and that he needed time to obtain new counsel. Lebedevitch, however, continued to appear on the defendant's behalf.

On April 18, 2023, the defendant was arraigned on a charge of threatening in the first degree in connection with an incident that was unrelated to the matters in which Lebedevitch was representing him, also in the judicial district of New Haven, geographical area number twenty-three. The court appointed the Office of the Public Defender to represent the defendant for this matter. Attorney Keith Zackowitz, of the public defender's office, subsequently appeared on the defendant's behalf regarding this charge. Lebedevitch continued to appear as the defendant's retained counsel for the other matters.

At a hearing on May 10, 2023, the defendant again expressed his dissatisfaction with Lebedevitch and told the court that he needed more time to obtain a different attorney. On June 16, 2023, Lebedevitch filed a motion to withdraw his appearance, representing that the attorney-client relationship had broken down irretrievably. In that motion, Lebedevitch asserted, inter alia, that the defendant had failed to return his calls to speak about an upcoming violation of probation hearing. The court, *Iannotti, J.*, held a hearing on June 22, 2023, to address Lebedevitch's motion,[3] but the defendant failed to appear in court. The defendant's bond was forfeited and his rearrest was ordered.[4] The court deferred ruling on Lebedevitch's motion.

The court, *Zagaja, J.*, addressed Lebedevitch's motion at a proceeding on August 22, 2023, which had been

[3] At the hearing, Zackowitz indicated that he also had filed a motion to withdraw his appearance.

[4] On July 14, 2023, the defendant was arraigned for violating the conditions of his release by failing to appear at the June 22, 2023 hearing, and the state indicated that the defendant also had cut off a GPS bracelet that he had been ordered to wear as a condition of his release.

scheduled with respect to the merits of the defendant's violation of probation charges. At the start of the hearing, the defendant stated that Lebedevitch was not his attorney and that he had been fired. The defendant stated, among other things: "He's not representing me on this matter. He's not my attorney. He's not representing me on no matters. He was fired. He filed a motion to withdraw on the 22nd. Before that, he filed a motion to withdraw, he was fired. He's not my attorney. He's not . . . He's not . . . He's not fighting on no cases. He's been lying to me the whole way through. This is not my attorney. This is not my attorney at all. I'm not moving forward with . . . nothing with this man name on it. He's not my attorney." The defendant also indicated that he had retained a different attorney to represent him who "should be walking in here any second." The court attempted to continue with the proceeding, but the defendant continuously interjected and repeatedly stated: "He's not my attorney."[5]

As a result of the defendant's disruptive behavior, the court ordered the defendant to be removed from the courtroom. In the defendant's absence, the court denied Lebedevitch's motion to withdraw his appearance. The court recalled that meaningful discussions previously had taken place between Lebedevitch and the defendant, and it believed that the defendant was "simply trying to not proceed with the violation of probation hearing," as reflected by his failure to appear at the June 22, 2023 hearing, his "boisterous" behavior in court, and his failure to cooperate with his transportation to court that morning. The court recessed to provide Lebedevitch and Zackowitz with an opportunity to speak to the defendant about whether he wanted to return to the courtroom and participate in the proceeding without being disruptive.

---

[5] At the hearing, the defendant stated, "He's not my attorney" or "This is not my attorney" a total of forty-seven times.

When court reconvened, the defendant, along with Lebedevitch, Zackowitz, and the prosecutor, returned to the courtroom and appeared before a different judge. The court, *Iannotti, J.*, stated its understanding that the parties had reached a plea agreement. The prosecutor confirmed that they had, explaining that the state had made an offer involving a total effective sentence of fifteen years of incarceration, execution suspended after eight years, followed by five years of probation, in exchange for the defendant's admission to the violations of probation and his guilty pleas under Docket No. CR-21-0235327-S to charges of possession of narcotics with intent to sell, criminal possession of a pistol or revolver, and failure to appear in the first degree.[6] The prosecutor stated that the state would enter a nolle prosequi as to all other remaining charges at sentencing.

The defendant, addressing the court directly, pleaded guilty to the charges pursuant to the *Alford* doctrine and admitted to the two violations of probation. The court conducted a canvass, during which the court told the defendant, inter alia, that he could not withdraw his pleas once they were accepted by the court as long as the court sentenced him in accordance with the plea agreement. The court stated: "I'm being really up front here and clear with you. Once I accept this plea, there's no turning back. You can't come back here in a couple of weeks and start yelling I'm taking my pleas back, I want my hearing. . . . [T]hat's over." The defendant responded that he understood. Upon completing the canvass, the court found that the guilty pleas had been knowingly and voluntarily made, with the effective assistance of counsel.

---

[6] On that same day, the state filed a substitute information in the case involving Docket No. CR-21-0235327-S charging the defendant with possession of narcotics with intent to sell in violation of § 21a-277 (a) (1) (A), criminal possession of a pistol or revolver in violation of § 53a-217c, and failure to appear in the first degree in violation of § 53a-172.

In September, 2023, the defendant, in a self-represented capacity, filed a motion to withdraw his guilty pleas and admissions on the grounds that he had been denied the effective assistance of counsel and furthermore that they were entered involuntarily and under duress. In October, 2023, the self-represented defendant filed an amended motion to withdraw his guilty pleas and admissions in which he detailed the manner in which the assistance provided by Lebedevitch allegedly had been ineffective.

The defendant's sentencing was scheduled for October 24, 2023. When the hearing began, the defendant stated that his pleas had been coerced and were involuntary. The defendant also repeatedly stated, as he had at the hearing on August 22, 2023, that Lebedevitch was not his attorney. The defendant added: "I spoke to Taylor Crillo . . . . Taylor Crillo was supposed to come down here and file an appearance. You're not my attorney."

The court, *Iannotti, J.*, began to address the defendant's motion to withdraw his guilty pleas and admissions when the defendant stated: "Your Honor, I would like to represent these guilty pleas and waive the appearance of my attorney and have stand-by counsel." The court did not address the defendant's statement but, rather, continued to summarize the proceedings from August 22, 2023, related to the defendant's pleas. Lebedevitch stated that he was not adopting the defendant's self-represented motion to withdraw and, in response to a question from the court,[7] indicated that he did not believe that the court's plea canvass was flawed. The court, after stating that it had thoroughly reviewed its canvass, denied the defendant's motion to withdraw.

---

[7] When the court addressed Lebedevitch, the defendant told the court: "Your Honor, I waived the appearance. . . . I waived the appearance."

The defendant subsequently stated: "Wait. Whoa, whoa, whoa, whoa, whoa. I waived the appearance to have this man present . . . for this motion to withdraw. . . . I contacted attorney—" The court interjected: "I'm denying that. Sir, I'm denying that. He is your sentencing lawyer." Additional discussion took place regarding the defendant's pleas and the prior denial of Lebedevitch's motion to withdraw his appearance. The following colloquy then ensued:

"The Defendant: Can you please give me a continuance for my lawyer to file a[n] appearance? . . . I obtained . . . I spoke to my attorney. My attorney was supposed to be here. Can you please just get this . . . this is not my attorney to represent me. He was fired beforehand . . . .

"The Court: Sir, you've had virtually—

"The Defendant: I have every right to fire him, Your Honor.

"The Court: With all due respect, sir, you have—

"The Defendant: Please . . . .

"The Court: [Y]ou have virtually had years, years for some other lawyer to come into the case.

"The Defendant: Silverstein was on trial . . . when I came [in] August he said he had a trial . . . . I stated to Lebedevitch when he came downstairs, could you please get me a continuance so my lawyer can come here. A month continuance.

"The Court: . . . I'm not gonna grant a continuance."

The court attempted to proceed with sentencing as the defendant continued to interject about his issues with Lebedevitch[8] and the claimed involuntariness of

[8] The defendant also raised concerns with Zackowitz' representation, however, Zackowitz was not present at the sentencing hearing. Daniel Lage, a different attorney from the public defender's office, appeared in place of Zackowitz.

his pleas. The court eventually sentenced the defendant in accordance with the plea agreement that he had reached with the state.[9] This appeal[10] followed.

On appeal, the defendant claims that the court improperly failed to canvass him pursuant to Practice Book § 44-3[11] after he clearly and unequivocally asserted his right to self-representation at the October 24, 2023 sentencing hearing when he stated: "Your Honor, I would like to represent these guilty pleas and waive the appearance of my attorney and have standby counsel." In response, the state argues, inter alia, that the defendant did not clearly and unequivocally invoke his right to self-representation and, therefore, the court had no obligation to canvass him.[12] We agree with the state.

[9] After the defendant was sentenced, he repeatedly called Lebedevitch a "liar" and stated that Lebedevitch had "sold [him] out." The court described the setting as "chaos." The defendant also kicked Lebedevitch in the leg on his way out of the courtroom.

[10] The defendant's appeal form lists only Docket No. CR-21-0235327-S and states that the defendant is appealing from his judgment of conviction under §§ 21a-277 (a) (1) (A), 53a-217c, and 53a-172.

[11] Practice Book § 44-3 provides: "A defendant shall be permitted to waive the right to counsel and shall be permitted to represent himself or herself at any stage of the proceedings, either prior to or following the appointment of counsel. A waiver will be accepted only after the judicial authority makes a thorough inquiry and is satisfied that the defendant:

"(1) Has been clearly advised of the right to the assistance of counsel, including the right to the assignment of counsel when so entitled;

"(2) Possesses the intelligence and capacity to appreciate the consequences of the decision to represent oneself;

"(3) Comprehends the nature of the charges and proceedings, the range of permissible punishments, and any additional facts essential to a broad understanding of the case; and

"(4) Has been made aware of the dangers and disadvantages of self-representation."

[12] The state also argues that the defendant's claim is unpreserved and that the record is inadequate for review under the first prong of *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015). Specifically, the state argues that the defendant's claim is unpreserved because the defendant "did not adequately alert the trial court to his invocation of his right to self-representation or that the trial court was required to conduct a canvass," and the record is inadequate for review under *Golding* because "the record in this

The defendant seeks review of his unpreserved claim under the doctrine set forth in *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015). "Under *Golding*, a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original; internal quotation marks omitted.) *State* v. *Washington*, 345 Conn. 258, 267, 284 A.3d 280 (2022). The record is adequate to review the claim, and it is of constitutional magnitude as it implicates the defendant's constitutionally protected right to self-representation. For the reasons that follow, we conclude that the defendant cannot

---

case is, at best, ambiguous as to what the defendant was requesting at his sentencing proceeding." We are not persuaded. The state's argument appears to conflate the issues of preservation and adequacy of the record for review with the extent to which the defendant has established the merits of his claim that he made a clear and unequivocal request to represent himself. Because a review of the transcripts fully establishes what happened before the trial court, thus setting the factual predicate for the defendant's claim on appeal, we proceed to address the merits of the defendant's claim. See, e.g., *State* v. *Elson*, 311 Conn. 726, 780, 91 A.3d 862 (2014) ("[t]he record in this case is perfectly adequate for review in that the transcript of the sentencing proceeding tells us verbatim what happened in the trial court").

In addition, the state raises alternative arguments that, even if we agree with the defendant that he made a clear and unequivocal request to represent himself, (1) the trial court was not required to conduct a canvass because the defendant forfeited his right to proceed in a self-represented capacity based on his disruptive behavior, and (2) the defendant suffered no harm by the lack of a canvass. In light of our conclusion that the defendant did not clearly and unequivocally invoke his right to self-representation, we need not address the state's alternative arguments.

prevail under *Golding* because he has failed to demonstrate that the alleged constitutional violation exists.

The following legal principles guide our analysis of the defendant's claim. "The sixth amendment to the United States constitution provides in relevant part: In all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense. The sixth amendment right to counsel is made applicable to state prosecutions through the due process clause of the fourteenth amendment. . . . In *Faretta* v. *California*, 422 U.S. 806, 807, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975), the United States Supreme Court concluded that the sixth amendment [also] embodies a right to self-representation and that a defendant in a state criminal trial has a constitutional right to proceed without counsel when he voluntarily and intelligently elects to do so. . . . In short, forcing a lawyer upon an unwilling defendant is contrary to his basic right to defend himself if he truly wants to do so. . . .

"It is well established that [t]he right to counsel and the right to self-representation present mutually exclusive alternatives. A criminal defendant has a constitutionally protected interest in each, but since the two rights cannot be exercised simultaneously, a defendant must choose between them. When the right to have competent counsel ceases as the result of a sufficient waiver, the right of self-representation begins. . . . Put another way, a defendant properly exercises his right to self-representation by knowingly and intelligently waiving his right to representation by counsel." (Internal quotation marks omitted.) *State* v. *Ghant*, 212 Conn. App. 662, 676–77, 276 A.3d 1004, cert. denied, 345 Conn. 901, 282 A.3d 465 (2022); see also, e.g., *State* v. *Braswell*, 318 Conn. 815, 827–28, 123 A.3d 835 (2015); *State* v. *Paschal*, 207 Conn. App. 328, 332–33, 262 A.3d 893, cert. denied, 340 Conn. 902, 263 A.3d 387 (2021), cert. denied,      U.S.     , 142 S. Ct. 1395, 212 L. Ed. 2d 341 (2022).

"State and federal courts consistently have discussed the right to self-representation in terms of invoking or asserting it . . . and have concluded that there can be no infringement of the right to self-representation in the absence of a defendant's proper assertion of that right. . . . The threshold requirement that the defendant clearly and unequivocally invoke his right to proceed [as a self-represented party] is one of many safeguards of the fundamental right to counsel. . . . Accordingly, [t]he constitutional right of self-representation depends . . . upon its invocation by the defendant in a clear and unequivocal manner. . . . In the absence of a clear and unequivocal assertion of the right to self-representation, a trial court has no independent obligation to inquire into the defendant's interest in representing himself . . . . [Instead] recognition of the right becomes a matter entrusted to the exercise of discretion by the trial court. . . . Conversely, once there has been an unequivocal request for self-representation, a court must undertake an inquiry [pursuant to Practice Book § 44-3; see footnote 11 of this opinion]; on the record, to inform the defendant of the risks of self-representation and to permit him to make a knowing and intelligent waiver of his right to counsel. . . .

"Although a clear and unequivocal request is required, there is no standard form it must take. [A] defendant does not need to recite some talismanic formula hoping to open the eyes and ears of the court to [that] request. Insofar as the desire to proceed [as a self-represented party] is concerned, [a defendant] must do no more than state his request, either orally or in writing, unambiguously to the court so that no reasonable person can say that the request was not made. . . . Moreover, it is generally incumbent upon the courts to elicit that elevated degree of clarity through a detailed inquiry. That is, the triggering statement in a defendant's attempt to waive his right to counsel need not be punctilious;

rather, the dialogue between the court and the defendant must result in a clear and unequivocal statement. . . .

"Finally, in conducting our review, we are cognizant that the context of [a] reference to self-representation is important in determining whether the reference itself was a clear invocation of the right to self-representation. . . . The inquiry is fact intensive and should be based on the totality of the circumstances surrounding the request . . . which may include, inter alia, whether the request was for hybrid representation . . . or merely for the appointment of standby or advisory counsel . . . the trial court's response to a request . . . whether a defendant has consistently vacillated in his request . . . and whether a request is the result of an emotional outburst . . . ." (Emphasis omitted; internal quotation marks omitted.) *State* v. *Pires*, 310 Conn. 222, 231–32, 77 A.3d 87 (2013).

"We ordinarily review for abuse of discretion a trial court's determination, made after a canvass pursuant to [Practice Book] § 44-3, that a defendant has knowingly and voluntarily waived his right to counsel. . . . In cases like the present one, however, where the defendant claims that the trial court improperly failed to exercise that discretion by canvassing him after he clearly and unequivocally invoked his right to represent himself . . . whether the defendant's request was clear and unequivocal presents a mixed question of law and fact, over which . . . our review is plenary." (Citation omitted; internal quotation marks omitted.) *State* v. *Jordan*, 305 Conn. 1, 13–14, 44 A.3d 794 (2012); see also *State* v. *Flanagan*, 293 Conn. 406, 419–21 and 420–21 n.10, 978 A.2d 64 (2009).

In the present case, we conclude that the defendant's isolated statement, when viewed in context and considering "the totality of the circumstances surrounding the

request''; (internal quotation marks omitted) *State* v. *Pires*, supra, 310 Conn. 232; see also *State* v. *Jordan*, supra, 305 Conn. 15; was not a clear and unequivocal request invoking his right to self-representation. Rather, the record demonstrates that, at the start of the October 24, 2023 hearing, just prior to the defendant's statement that he would ''like to represent these guilty pleas and waive the appearance of [his] attorney and have stand-by counsel,'' the defendant indicated that he had spoken to a different attorney who ''was supposed to come down here and file an appearance.'' In addition, after the defendant's purported request to represent himself, the defendant stated that his new attorney ''was supposed to be here'' and explicitly asked the court for a continuance in order for his new attorney to appear on his behalf.

Indeed, the record demonstrates that, beyond the one isolated statement by the defendant at the October 24, 2023 hearing, on which he relies in support of the present claim, the defendant had displayed a pattern of conduct, at and before that proceeding, in which he had been focused on firing Lebedevitch and replacing him with a different, privately retained attorney, including at the August 22, 2023 hearing when he repeatedly stated that Lebedevitch was not his attorney and explained that he had retained a different attorney to represent him who ''should be walking in here any second.'' See *State* v. *Pires*, supra, 310 Conn. 240 (considering defendant's ''pattern of activity'' over course of several pretrial proceedings, which demonstrated that, beyond one isolated comment by defense counsel that defendant told her that he wanted to represent himself, defendant's energies ''had been exclusively devoted to trying to 'fire' [defense counsel] and have her replaced with different court-appointed counsel'' (emphasis omitted)); see also *State* v. *Carter*, 200 Conn. 607, 611, 513 A.2d 47 (1986) (defendant's repeated complaints

about public defender's performance and requests for appointment of special public defender, and his statements that " 'I am misrepresented and now I have to represent myself' " and " 'I'll have to represent myself,' " did not constitute clear and unequivocal request when "couched in terms of his request for a different public defender" (internal quotation marks omitted)).

Further, the court's failure to acknowledge the defendant's comment about his apparent desire to represent himself and rule definitively on that matter also supports the conclusion that the defendant's comment was not clear and unequivocal. See *State* v. *Pires*, supra, 310 Conn. 242 ("[t]he trial court's response is one factor that we consider in determining whether the defendant's request was clear and unequivocal"). Thus, considering the totality of the circumstances and the context of the defendant's isolated statement, we conclude that the court was not required to canvass the defendant pursuant to Practice Book § 44-3 because he did not clearly and unequivocally invoke his right to self-representation. Accordingly, the defendant's claim fails under *Golding*'s third prong.

The judgment is affirmed.

In this opinion the other judges concurred.